## KONOPISOS v. STATE.

(No. 934; Decided Dec. 1, 1919; 185 Pac. 355.)

DISORDERLY HOUSE—ELEMENTS OF OFFENSE—SUFFICIENCY OF EVIDENCE—CRIMINAL LAW—CORROBORATION OF CONFESSIONS AND ADMISSIONS INSUFFICIENT TO CONVICT—WITNESS'S IMPEACHMENT—CROSS EXAMINATION AS TO OTHER OFFENSES—OBJECTIONS TO JURISDICTION FIRST RAISED ON APPEAL.

1. In order to convict for the offense of keeping a house of ill fame as defined by Comp. Stat. 1910, Sec. 5909, the state must prove the house in question to be a house of ill fame, or bad repute, resorted to for the purpose of prostitution or lewdness, and that defendant kept the house, aided in keeping it, or was interested in it.

2. In a prosecution for keeping a house of ill fame, evidence held, insufficient to sustain conviction.

3. The *corpus delicti* cannot be established by extra-judicial confessions or admissions unsupported by other evidence, nor are such admissions alone sufficient to support a conviction.

4. One cannot be convicted of keeping a house of ill fame, under Comp. Stat. 1910, Sec. 5909, alone upon admissions made by him; there being no other evidence tending to prove the elements of the offense.

5. In a prosecution under Comp. Stat. 1910, Sec. 5909, for keeping a house of ill fame, it was prejudicial error to permit the state on cross-examination of defendant to ask if he had not been arrested and convicted of being a pimp, to which he answered "Yes", over objection; such matter having no connection with the offense charged.

6. An objection that the trial court had not jurisdiction to consider an information as an original case, there being an appeal pending in the court from the conviction of the identical offense, cannot be raised for the first time on appeal.

ERROR to District Court, Platte County, HON. WILLIAM C. MENTZER, Judge.

Tony Konopisos was convicted of keeping a house of ill fame, and brings error.

*Oscar O. Natwick* and *Marion A. Kline,* for plaintiff in error.

The evidence was insufficient to prove the elements of the offense; the crime is statutory, and the essential elements

are, 1st, that the house in question was a house of ill fame, 2nd, that it was resorted to for prostitution, 3rd, that it was kept by defendant at, or about the time mentioned in the information (People v. Russell, 67 N. W. 1099; People v. Wheeler, 105 N. W. 609; State v. Harberlee, 33 N. W. 462; Drake v. State, 17 N. W. 117; People v. Pinkerton, 44 N. W. 181; People v. Gastro, 42 N. W. 939); extrajudicial statements and admissions of defendant are insufficient to establish the corpus delicti (People v. Simonson, 40 Pac. 440; Wistrand v. People, 72 N. E. 748; Grey v. Com., 101 Pa. 380; U. S. v. Boese, 46 Fed. 917). The court erred in allowing the prosecuting attorney to ask defendant whether he had not been convicted of being a pimp, and compelling him to answer the question. The verdict and judgment are unsupported by any evidence; the conviction was for a misdemeanor that had already been tried in Justice Court; the record shows that defendant was tried for the same offense before a justice of the peace, who rendered a judgment of conviction from which an appeal was taken to the district court; the district court was without jurisdiction to hear and determine the case on original information that was already pending before it on appeal from a prior conviction in justice court; this court should set aside the second conviction for want of jurisdiction.

*D. A. Preston, Attorney General,* for defendant in error.

The record does show a former conviction for the same offense in Justice Court, which was pending on appeal there at the time of this conviction; general assignment that the judgment is contrary to law is insufficient (Miller v. State, 3 Wyo. 657); defendant admitted his guilt in the presence of witnesses; this was sufficient to sustain conviction; there being some evidence to sustain conviction, it will not be set aside on appeal; errors of law must be specified with particularity; this has not been done (Foster v. State, 59 Ind. 481; Edmonds v. State, 34 Ark. 734; Sweet v. State, 90 Ga. 315; Benson v. State, 119 Ind. 483); the errors complained of are too vague and indefinite for consideration by

this court; the assignment of error on account of a former conviction in Justice Court, comes too late when raised for the first time on motion for a new trial.

BLYDENBURGH, JUSTICE.

The defendant was convicted by the verdict of a jury "of keeping a house of ill fame resorted to for the purpose of prostitution or lewdness". A motion for a new trial was duly made and denied, and the case is brought here on error.

The alleged errors, while eleven in number, may all be considered under the following heads:

1. That there was no competent evidence introduced to prove the necessary elements of the alleged offense.

2. That alleged admissions or extra judicial confessions of the defendant were improperly admitted in evidence without any other evidence of the corpus delicti.

3. That certain other evidence was wrongfully admitted on behalf of the prosecution.

4. There being an appeal pending in the same court from a conviction before a justice of the peace of the identical offense charged, the court could not assume and exercise original, but only appellate jurisdiction.

Before the trial in the court below, the County and Prosecuting Attorney filed a motion to *nolle pros* the information on the ground that the evidence obtained by the prosecution was insufficient to convict the defendant of the crime charged. This motion was denied by the court, and at the argument of the case in this court the Attorney General did not combat the position of the defendant but confessed the errors complained of, and deplored the fact that his time and the time of this court should be taken up by such cases which should have been dismissed in the lower court.

The statute under which the information in this case was drawn is section 5909 of the Wyoming Compiled Statutes of 1910, and is as follows:

"Whoever keeps a house of ill-fame, resorted to for the purpose of prostitution or lewdness; or knowingly lets a house to be so kept; or knowingly permits a house which

he has let to be so kept, shall be fined not more than one hundred dollars, to which may be added imprisonment in the county jail not more than six months."

This is a statutory offense and the essential elements that the state must prove before conviction can be had are:

1.   That the house in question is a house of ill-fame,—that is, that it is a house of bad repute or evil notoriety.

2.   That it is resorted to for the purpose of prostitution or lewdness.

3.   That the defendant kept the house, aided in keeping it, or was interested in it.   (State v. Haberle, 72 Ia. 138, 33 N. W. 461; People v. Pinkerton, 79 Mich. 110, 44 N. W. 180; Drake v. State, 14 Nebr. 535, 17 N. W. 180; People v. Russell, 110 Mich. 46, 67 N. W. 1099; People v. Wheeler, 142 Mich. 212, 105 N. W. 607.)

The evidence on behalf of the state consisted of the testimony of the prosecuting witness, Daniel S. McCorkle, and his wife, Mrs. McCorkle, who testified to a lengthy conversation with the defendant in the front part of his saloon at Hartville, Platte County, Wyoming, the premises alleged to be kept by the defendant as a house of ill-fame, in which conversation certain statements of the defendant are claimed to be admissions of guilt of the offense charged, and in addition the testimony of one Manual Stamnolajais, who accompanied the McCorkles on the occasion of the conversation. While the conversation is testified to as extending over an hour,—it seems that the McCorkles went to the saloon to persuade the defendant to send away girls they claimed he was keeping in connection with his saloon,—the substance of the alleged admisions is that the defendant said he was keeping the girls as a protection to the decent women of the community and they were his girls.   McCorkle also testified that during the conversation, which was in the front part of the saloon, only separated by screen doors from the rest of the saloon, he heard a woman talking, "a distinctly feminine voice" in the back part of the saloon, and Stamnolajais testified that he saw one girl in the back of the

saloon at the time of this conversation. No other evidence was introduced on behalf of the prosecution.

It appears from the evidence on behalf of the defendant that there existed in Hartville a property generally known as Fletcher's Opera House, which was owned by C. D. Fletcher, who was sworn as a witness on behalf of the defendant, and covers altogether four lots. This property consisted of three parts: a theatre, a hotel with ten to fifteen rooms, and the saloon or bar room part; that the defendant rented the bar room and ran his saloon in it and this bar room was entirely separate from the hotel part of the premises, except that there was a door from the bar room into a hall of the hotel. Fletcher had rented, by a written lease, the hotel part to one Eva Brice to be run as a hotel covering the time alleged in the information, and Eva Brice had paid him the stipulated rent covering this time, which was evidenced by receipts introduced in evidence; that the defendant did not have anything to do with the hotel part nor any business connection with Eva Brice, and did not even room at the hotel or saloon, but some two blocks from the saloon and hotel. That the girls referred to in the state's evidence stayed in the hotel and that Eva Brice had plead guilty before the police judge to running a house of ill-fame and Fletcher, who was away in Montana at the time, upon his return and learning of it compelled her to move out. There is no evidence in the record as to the reputation of the saloon run by the defendant being disorderly or otherwise, no evidence that it was resorted to for prostitution or lewdness by anyone. This is not a case in which there is a conflict of evidence, and the jury in its province might reject some and believe other evidence, but there is an absolute absence of evidence to substantiate the charge.

It is a well established principle of criminal law by the overwhelming weight of authority that the *corpus delicti* cannot be established by extra judicial confessions or admissions unsupported by other evidence. (7 R. C. L. 777). Nor are such admissions sufficient alone to support a con-

viction (16 C. J. 628). And should not be allowed to go to the jury until other evidence sufficient to go to the jury on the question of the *corpus delicti* has been introduced by the state. In this case there was no evidence tending to prove the elements of the offense outside of the alleged admissions of the defendant, and these are such that if true, and the defendant denied he made them, are not sufficient to prove the offense charged.

As to the errors in the admission of evidence there seems to have been a tendency to get before the jury any evidence which would go to show that the defendant was not a person of upright or moral character, but it is not necessary to refer to all of the instances pointed out in defendant's brief. One will be sufficient to illustrate them all. On cross-examination the defendant was asked if he had not been arrested and convicted of being a "Pimp", and over objection was compelled to answer Yes! This had no connection with the offense charged nor with anything brought out in his direct examination and it was shown to have been after he had ceased running his saloon by reason of his license having expired. That his conviction of this offense was brought to the attention of the jury merely to prejudice it against him is evident and was error. In the case of People v. Pinkerton, *supra,* which was a prosecution for a like offense in Michigan under a statute identical with ours, Judge Campbell, speaking for the court, said:

"All testimony, even of conviction, and not merely of accusation of crimes or misconduct not in issue, is improper. It raises false issues, and is likely to lead a jury to try the accused of what is not in the information. This doctrine is elementary, and has been too frequently held to need citations. * * * ; and, in a criminal case, we do not think it competent to compel a respondent who is a witness to answer questions, irrelevant to the issue, having a tendency to bring in other charges. Whatever latitude is proper in cross-examination to test veracity, it cannot properly introduce independent issues, against the person who is both witness and respondent."

As to the last head of error that the court had no jurisdiction to consider the information as an original case, there being an appeal pending in the court from a conviction for the identical offense, it is only necessary to say that the record does not disclose that this matter was raised before or during the trial in the court below, either by plea in bar or in any other manner and was therefore waived.

It was intimated in the argument that the conviction in this case was largely due to the complaint of the state of affairs at Hartville and the immoral atmosphere surrounding the defendant and others at that town and from the record in this case we can well believe that the verdict of the jury was the result of prejudice adduced by some such conditions. But however disreputable the defendant may be, courts must see that when he is brought to trial for a criminal offense that he is protected by the safeguards that the constitution and laws of the land surround him with, and is only convicted after a fair trial on competent evidence and under the well established rules of criminal law and procedure, no matter how obnoxious is the offense that he is charged with. Anything else would be to tear down the safeguards to innocent persons charged with any kind of criminal offense.

The judgment will be reversed with direction to the lower court to grant the defendant a new trial.

*Reversed.*

BEARD, C. J., and POTTER, J., concur.