Jerry OSBORNE, Appellant
(Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff) (Two Cases).

Jerry OSBORNE, a/k/a Jerre Osborne,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

Nos. 90–66 to 90–68.

Supreme Court of Wyoming.

Feb. 11, 1991.

Leonard D. Munker, State Public Defender, Steven E. Weerts, Sr. Asst. Public Defender, and Donald K. Slaughter, Legal Intern (argued) for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., Charles A. Breer (argued); and Donald G. Moore, Legal Intern, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

Jerry Osborne challenges her conviction for procuring and receiving money from prostitution. The conviction also resulted in revocation of her probation on two other charges. In this consolidated appeal, she challenges those revocations as well.

We affirm.

Appellant brings the following issues:

ISSUE I

Whether appellant's conviction and probation revocations should be reversed due to insufficiency of the evidence?

ISSUE II

Whether appellant's trial attorney had sufficient opportunity to discover the State's evidence?

ISSUE III

Whether appellant's conviction and probation revocations should be reversed due to ineffective assistance of counsel?

ISSUE IV

Whether the trial court erred by failing to dismiss for lack of a speedy trial?

Appellant Jerry Osborne ran a business in Casper known as the A–1 Escort Service. The business operation attracted customers through a newspaper advertisement listing a telephone number to call. The caller would reach an answering machine and hear a tape recorded message with appellant's voice requesting that the caller leave a number. Appellant would then return the call and arrange a meeting with a woman who would solicit an act of prostitution.

Appellant had five women working for her. Upon receiving a call, she would send one of them out to meet a customer. She instructed these "employees" how much they should charge and what precautions to take upon meeting a customer. These precautions included checking the customer for identification, checking in with her after completion of the services rendered, and collection of the money. The "employee" would then go to appellant's house and deliver to appellant her share of the proceeds. Charges ranged from $60 to $120. The "employee" retained $50 plus tips, and appellant kept the difference.

Appellant was charged with promoting prostitution under W.S. 6–4–103 on December 13, 1988. On December 27, 1988, she waived her right to a speedy preliminary hearing. On January 11, 1989, her preliminary hearing was held in Natrona County Court, and the case was bound over for trial in district court. A criminal information was filed on January 13, 1989, charging appellant with violation of W.S. 6–4–103(a) and conspiracy to violate W.S. 6–4–103(a), which provides:

"(a) A person commits a felony if he:

"(i) Knowingly or intentionally entices or compels another person to become a prostitute;

"(ii) Knowingly or intentionally procures, or offers or agrees to procure, a person for another person for the purpose of prostitution;

"(iii) Having control over the use of a place, knowingly or intentionally permits another person to use the place for prostitution; or

"(iv) Receives money or other property from a prostitute, without lawful consideration, knowing it was earned in whole or in part from prostitution."

Appellant's arraignment was scheduled for February 2, 1989, but was rescheduled due to inclement weather. At a February 16, 1989 arraignment, appellant pled not guilty. The trial, scheduled for May 15, 1989, was continued upon appellant's motion. On June 26, 1989, the State requested a setting for trial. The court scheduled a trial for October 10, 1989.

Prior to trial, the conspiracy charge was dismissed. On the day of the trial, appellant moved for dismissal due to lack of speedy trial. The court denied the motion, attributing part of the fault for the delay to the appellant.

Following a trial to the court, appellant was found guilty of violation of subsections (ii) and (iv) of W.S. 6–4–103(a), procuring a person for the purpose of prostitution and receiving money for prostitution. At the time of this conviction, appellant was on probation for an insufficient funds check charge to which she pled guilty in 1985 and for charges of fraud by check and misdemeanor larceny by bailee to which she pled guilty in 1987. Her probation was revoked, each revocation garnering appellant two to four years in prison to be served concurrently. For the prostitution conviction, appellant was given a sentence of 13 to 16 months in prison to be served consecutively to the revocation sentences. This sentence was suspended and replaced with a sentence of one year probation which included a six-month term at the Casper Community Alternatives program following her release from prison.

## SUFFICIENCY OF THE EVIDENCE

When reviewing a challenge to a criminal conviction on the basis of sufficiency of the evidence, we examine all the evidence in a light most favorable to the State. *Mendicoa v. State*, 771 P.2d 1240, 1243 (Wyo. 1989). We then draw all favorable, reasonable inferences from this evidence to determine whether any rational trier of fact could have found, beyond a reasonable doubt, the elements of the crime necessary for a conviction. *Griffin v. State*, 749 P.2d 246, 248 (Wyo.1988). We apply this same standard whether trial is to a jury or to the court as in this case. *Tennant v. State*, 776 P.2d 761, 763 (Wyo.1989).

The evidence at the trial included testimony from a Casper police officer and a former A–1 "employee," plus records from A–1 transactions and a telephone answering machine tape. The telephone answering machine tape captured appellant's voice describing A–1 services; and the records in appellant's handwriting documented the names of customers, the amount of money received and the split of the proceeds between her and her "employees." The testimony established appellant made arrangements for acts of prostitution in violation of subsection (ii) and received money from it in violation of subsection (iv). Even one of appellant's witnesses, Tina Meastas, whose testimony implicated herself instead of appellant as the proprietor of this business, admitted that appellant participated in numerous factions of the enterprise and received money from it.

Appellant directs attention to the case of *Konopisos v. State*, 26 Wyo. 350, 185 P. 355 (1919), for the proposition that a conviction for promoting prostitution cannot stand when the evidence consists solely of admissions by the defendant. Konopisos was convicted of running a house of ill fame based solely on the testimony of two men who stated that Konopisos maintained such an establishment. 185 P. at 356. We reversed because this evidence alone was insufficient to establish the corpus delicti,

*i.e.*, the existence of a "cat house" (as Justice Blume said, "whatever that may be," *Boschetto v. Boschetto*, 80 Wyo. 374, 343 P.2d 503, 505 (1959)) and women to staff it. 185 P. at 356. The holding in *Konopisos* has no application here. The evidence to convict appellant consists not of admissions by the defendant at all but of testimony concerning her activities plus physical evidence. This type of evidence is similar to the type of evidence in *Belondon v. City of Casper*, 456 P.2d 238 (Wyo.1969), where the appellant challenged the sufficiency of the evidence for convictions of soliciting an act of prostitution and maintaining a house of prostitution. In *Belondon*, the evidence included testimony that the appellant directed the activities of the prostitutes, controlled the premises, and had possession of marked money. 456 P.2d at 240. Sufficient evidence was presented in this case for any rational finder of fact to find beyond a reasonable doubt the elements of the crime necessary to conclude that appellant violated W.S. 6–4–103(a)(ii) and (iv).

## ACCESS TO THE STATE'S EVIDENCE

■ Appellant contends in her second issue that the prosecutor improperly denied her access to the State's evidence. W.R. Cr.P. 18 deals with discovery in criminal matters. It states in pertinent part:

"(a) *Defendant's statement; report of examinations and tests; defendant's grand jury testimony.*—Upon motion of a defendant, the court may order the attorney for the state to permit the defendant to inspect and copy or photograph any relevant:

"(1) Written or recorded statements or confessions made by the defendant or copies thereof, within the possession, custody or control of the state, the existence of which is known, or by the exercise of due diligence may become known, to the prosecuting attorney;

"(2) Results of reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession, custody or con-

trol of the state, the existence of which is known, or by the exercise of due diligence may become known, to the prosecuting attorney; and

"(3) Recorded testimony of a defendant before a grand jury.

"(b) *Other books, papers, documents, tangible objects or places.*—Upon motion of a defendant the court may order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the state, upon a showing of the materiality to the preparation of his defense, and that the request is reasonable. Except as provided in subdivision (a)(2) this rule does not authorize the discovery or inspection of reports, memoranda or other internal governmental documents made by governmental agents in connection with the investigation or prosecution of the case, or of statements made by state witnesses or prospective state witnesses (other than the defendant) to governmental agents except as provided in subdivision (c) of this rule.

"(c) *Demands for production of statements and reports of witnesses.*

"(1) After a witness called by the state has testified on direct examination, the court shall, on motion of the defendant, order the state to produce any statement (as hereinafter defined) of the witness in the possession of the state which relates to subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

"(2) If the state claims that any statement ordered to be produced under this subdivision contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the state to deliver such statement for the inspection of the court *in camera.* Upon such delivery the court shall excise the portions of such statement

which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. If, pursuant to such procedure, any portion of such statement is withheld from the defendant and the defendant objects to such withholding, and the trial is continued to the adjudication of the guilt of the defendant, the entire text of such statement shall be preserved by the state, and in event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. Whenever any statement is delivered to the defendant pursuant to this rule, the court in its discretion, upon application of the defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant in his preparation for its use in the trial.

"(3) If the state elects not to comply with an order of the court under subdivision (1) or (2) hereof to deliver to the defendant any such statement or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

"(4) The term 'statement' as used in subdivisions (1) and (2) and (3) of this rule relating to any witness called by the state, means:

"(a) A written statement made by said witness and signed or otherwise adopted or approved by him; or

"(b) A stenographic, mechanical, electrical or other recording or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the state and recorded contemporaneously with the making of such oral statement." W.R. Cr.P. 18.

On June 26, 1989, appellant filed a motion pursuant to W.R.Cr.P. 18 for discovery. No order for discovery, however, was ever issued, and appellant's trial counsel admits this was due to her oversight. In absence of an order, we cannot find that the prosecution engaged in misconduct. *Capshaw v. State,* 714 P.2d 349, 351 (Wyo.1986).

Appellant also advances this issue by maintaining that the prosecutor granted her trial attorney permission to view the evidence at the police station, but the evidence technician never let her see the evidence. Her attorney, however, admitted she never went to the police station although she called the station. The evidence technician recalled a telephone call during which he invited the attorney to come to the police station to inspect the evidence. Appellant's attorney maintained she never received permission over the telephone. Neither the attorney's statement nor the evidence technician's statement were made under oath or in an affidavit. This brings the competency of either version of events into question and demonstrates the need for confirmatory writing and litigating within the rules of procedure. *Cf. United States v. Valenzuela–Bernal,* 458 U.S. 858, 873, 102 S.Ct. 3440, 3450, 73 L.Ed.2d 1193 (1982). We cannot predicate error on what might have transpired between the evidence technician and appellant's attorney. Appellant has the burden to make an affirmative showing of error. *Charter Thrift and Loan v. Cooke,* 766 P.2d 522, 524 (Wyo.1988). A record amounting to unsworn accusations does not amount to such a showing.

Even if we assume, *arguendo,* that appellant counsel's version of these events is accurate, we cannot find error. The prosecution was under no obligation to permit discovery absent an order. *Capshaw,* 714 P.2d at 351.

## ASSISTANCE OF COUNSEL

Appellant presents this issue as the other side of the coin to her second issue. She argues that if her access to the State's evidence was not attributable to the prosecutor, then it should be attributable to ineffective assistance of counsel.

■ Establishing ineffective assistance of counsel at the trial requires meeting two tests. It must be demonstrated that counsel's representation was so deficient by showing errors were made that were so serious that counsel was not functioning in accordance with the constitutional guarantee of counsel and that the deficient performance prejudiced the appellant. *Murray v. State*, 776 P.2d 206, 210 (Wyo.1989).

■ Although appellant's trial counsel should have pursued her motion for discovery and attempted to have the court issue an order, no demonstration of prejudice as a result of this dereliction is apparent. Appellant must show a reasonable probability that, but for counsel's errors, the result would have been different. *Frias v. State*, 722 P.2d 135, 146 (Wyo.1986). A reasonable probability is a probability sufficient to undermine the outcome. *Id.* Counsel had an opportunity to review the State's evidence before trial. Appellate counsel also had access to this evidence as it was included in the record on appeal. In order to make the requisite showing of prejudice, something in the State's evidence would have to suggest that a different verdict was probable. Appellant did not point us to anything in this evidence to suggest the probability of a different verdict. We cannot say that the trial counsel's ineffectiveness prejudiced the appellant.

## SPEEDY TRIAL

■ Our speedy trial analysis is well established. We use the balancing test for evaluating speedy trial challenges that the United States Supreme Court formulated in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). This test requires us to look at: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of her right; and (4) the prejudice to the defendant. *Id.; Harvey v. State*, 774 P.2d 87, 92 (Wyo.1989). We consider all four factors together and balance them in relation to all relevant circumstances. *Id.*

### Length of the Delay

■ The speedy trial clock starts to run upon arrest or when the complaint is filed. *Id.* at 94. The complaint was filed on December 13, 1988. Trial was held on October 10, 1989, a span of 301 days. Appellant's preliminary hearing was moved from December 27, 1988, to January 11, 1989, after she waived her right to a speedy preliminary hearing. Thus a 15–day delay is attributable to the defendant.

■ Rule 204 of the Uniform Rules for the District Courts of the State of Wyoming contains a 120–day deadline from the filing of the indictment or information for bringing a defendant to trial in order to ensure a speedy trial. This rule is advisory in nature and is a factor to be considered in the balancing test. *Harvey*, 774 P.2d at 93.

An information against appellant was filed on January 13, 1989. She was brought to trial on October 10, 1989. This is a span of 270 days. Delays caused by continuances on a motion of the defendant are subtracted from this time span when computing the amount of delay. Rule 204(c)(3) and (d)(1).

The trial was first scheduled for May 15, 1989. On May 12, 1989, appellant's counsel moved for, and the court granted, a continuance. On June 26, 1989, the State filed a request for a setting for a bench trial. The court set the trial for October 10, 1990. We subtract 42 days for the period from the date the trial was first scheduled to the date when the State filed its request for a setting.

Thus, the length of time between the filing of the information and the date of the trial not attributable to appellant is 228 days. Subtracting the 15–day delay for the speedy preliminary hearing waiver along with the 42–day delay for the continuance, 244 days passed between the filing of the complaint and commencement of trial. This case contrasts greatly with the *Harvey* case where a delay of 531 days from the filing of an information to the trial or 562 days from the date of the arrest to the trial was found to be "presumptively prejudicial." 774 P.2d at 94. We do not find this delay to be presumptively prejudicial but it is significant enough to warrant further analysis. *Caton v. State*, 709 P.2d 1260, 1265 (Wyo.1985). *See also Estrada v. State*, 611 P.2d 850, 853 (Wyo.1980).

## Reason for the Delay

Much of the delay is due to the court's schedule as well as the weather. Appellant's arraignment was delayed from February 2, 1989, to February 16, 1989, a total of 14 days, due to inclement weather. After the State filed its request for a setting in June, the court scheduled a trial for October due to its stacking for bench trials. The reasons for these two delays are neutral, so we accord it less weight than a delay which would have been deliberately caused by the State. *Estrada,* 611 P.2d at 854. The State's request came after appellant waived her right to a jury trial. The record indicates that a jury trial could have been scheduled sooner. We will take this into account in our balancing as well. We also find no lack of diligence on the part of the prosecution. This contrasts to the *Harvey* case where even the State conceded that much of the delay had no reasonable explanation. 774 P.2d at 94.

## Defendant's Assertion of Her Rights

Although it is not necessary that a defendant assert the right to a speedy trial in order to find a speedy trial violation, it is a relevant and proper factor to consider. *Harvey,* 774 P.2d at 95. Appellant has had the benefit of counsel since she was charged. We distinguish between assertions of the right made without benefit of counsel and ones made with the benefit of counsel. *Estrada,* 611 P.2d at 855.

Appellant raised the issue first on the morning of her trial when she moved for dismissal because of a lack of a speedy trial. Appellant did not assert her right when the court scheduled the trial. The trial court stated that had appellant urged in June that the October setting was too late, then court would have adjusted its schedule to accommodate an earlier setting. Appellant renewed her motion after the State rested its case. Appellant asserted her right less vigorously than did the appellant in *Robinson v. State,* 627 P.2d 168 (Wyo.1981). In *Robinson,* appellant pressed a speedy trial issue two weeks before trial. *Id.* at 171. We put little weight on this factor in *Robinson;* we place even less here.

## Prejudice to the Defendant

Prejudice is a key element in the balancing test but not a necessary one. *Caton,* 709 P.2d at 1266. Prejudice to the defendant may consist of (1) lengthy pretrial incarceration, (2) pretrial anxiety, or (3) impairment of the defense. *Harvey,* 774 P.2d at 96. Unless the delay exceeds a point where there is a probability of substantial prejudice, the burden is on the appellant to show prejudice. *Id.* The length of the delay here is about the same length as it was in *Caton.* 709 P.2d at 1264. The length of the delay is not the 18 months which we found to be presumptively prejudicial in *Harvey.* 774 P.2d at 97. The burden is on the appellant to show prejudice.

Appellant apparently argues that the only prejudice the delay caused was of the pretrial anxiety type. She claims that while awaiting trial, she was unable to find a job which impaired her ability to care for her daughter and mother. The record does not bear this out. In fact, the record indicates that appellant continued involvement with the escort service until her sentencing, ran a pool hall which was shut down for being unlicensed, and attempted to start a hair salon business. Appellant fails to carry her burden, and we find the delay caused her no prejudice.

## Balancing

Although her trial was delayed, the reasons for the delay not attributable to her are neutral. Appellant did not vigorously assert her right to a speedy trial, and although she had the benefit of counsel, she never pressed for an earlier setting. She has shown no prejudice caused by the delay. These considerations lead us to conclude that appellant's right to a speedy trial was not violated.

Finding no error in the issues raised, this case is

Affirmed.

URBIGKIT, Chief Justice, concurring.

I concur in the opinion and decision of the majority, except I remain concerned

about the ineffectiveness of the Uniform Rules for the District Courts of the State of Wyoming. This ineffectiveness is like a disease and spreads by nonenforcement.

In 1968, under the administration of Chief Justice Harry S. Harnsberger, the Wyoming Supreme Court adopted the Rules of Criminal Procedure which were generally patterned after federal rules, but included, in addition, Rule 52:

> The Wyoming Judicial Conference may from time to time make and amend rules governing practice in the district courts not inconsistent with the Wyoming Rules of Criminal Procedure or applicable statutes. Copies of rules and amendments so made shall, upon their promulgation, be furnished to the Supreme Court.

The Wyoming Judicial Conference, created initially by agreement of the participants, was then and is now composed of the district judges and members of the Wyoming Supreme Court; that is today, seventeen district judges and five Supreme Court justices. For reasons not explainable by any written history but understandable from the independent status, real or perceived, of the district judges, the Uniform Rules for the District Courts, unlike any other state court rules, do not receive either direct Supreme Court consideration or require its approval for effectiveness.

The Uniform Rules for the District Courts, in present form, address the following subjects:

Rule No.

101. Appearances.

102. Appearance and withdrawal of counsel.

201. Continuances.

202. Time limits.

203. Default; dismissal for lack of prosecution.

204. Speedy trial.

301. Filing of motions.

302. Filing of discovery documents.

303. Proof of service.

304. Official court files.

305. Form of jury demands, orders, and notices of motion.

401. Captions on filed documents.

402. Citation of statutes.

403. Format of briefs and jury instructions.

404. Preparation of orders.

501. Interrogatories.

502. Audio-visual depositions.

601. Pretrial practice.

701. Voir dire of jurors.

702. Juror interrogation.

801. Courtroom decorum.

802. Use of telephone conference calls.

803. Use of recording equipment by counsel.

901. Sanctions.

902. Cases under advisement.

903. Disposition of exhibits.

I have a strong perception regarding the Uniform Rules for the District Courts. If one in their number is advisory only, then all are advisory. If advisory, such as speedy trial, they can be neither effective for benefit nor limiting for restriction and supervision. Specifically, if Rule 204 of the Uniform Rules for the District Courts on speedy trials exists somewhere in purgatory as advisory as we now state in this case, then each and every category of the Uniform Rules for the District Courts is advisory for whatever that might mean. I cannot conceptualize court rules to be advisory on either speedy trial or any of the other subjects addressed. My review and analysis as stated in *Phillips v. State*, 774 P.2d 118, 125 (Wyo.1989), Urbigkit, Justice, specially concurring, and *Harvey v. State*, 774 P.2d 87, 98 (Wyo.1989), Urbigkit, Justice, specially concurring, remain unchanged.

I am then led to a further concern that if the citizens of Wyoming cannot depend on the efficacy of our court adopted operational rules, what then is there about the judicial process that is justifiable for trust and reliance? A king's-X aptitude is not acceptable to me because it leaves indeterminate whether there are rules which actually provide benefits and impose obligations upon the lawyers and the litigants or are only advisory concepts for whatever purpose they then serve.

Regarding the constitutional and practical issues of a speedy trial, there are,

without question and within the exceptions provided in Rule 204 of the Uniform Rules for the District Courts, state court criminal trials that can and are being tried and completed to verdict. In fact, this is the predominate, if not the universal, status today after the shock of *Phillips* and *Harvey* has been defused. This court has at this time either the moral responsibility to do what is required to make the Uniform Rules for the District Courts firm and enforceable or to rescind and repeal what otherwise becomes a trap and snare for the unsophisticated litigant.

I concur in this case because it can be established that the extensions of time permitted were satisfactorily within the 120–day time frame application so that the schedule followed did not violate Rule 204 of the Uniform Rules for the District Courts. *Despain v. State*, 774 P.2d 77 (Wyo.1989).

I find in the factual events three circumstances which satisfy my concern about the timeliness of the trial. There was a weather delay for rescheduling on arraignment, *Id.*, and then the case itself was set for trial on May 15, which was clearly within time. That scheduled date was struck by a request of Osborne's counsel who, at the time of the request, did not seek a rescheduled date. Rescheduling was left to the prosecutor who followed-up to ask for trial reassignment. Trial was then scheduled for October 10, 1989, which fit within the trial court's schedule for bench trial cases. No expeditious hearing request was made by Osborne or her counsel after the continuance request was granted by the trial court.

In the due administration of justice exception interjected by the request for continuance made by Osborne's counsel, Rule 204(d)(2)(iii) of the Uniform Rules for the District Courts leaves more for the responsibility of Osborne's counsel than just to initially obtain a trial continuance. I would perceive that if either prosecution or defense requests a continuance, the applying party should have the immediate or timely responsibility to arrange for a rescheduled trial date. That expeditious request permits the trial court to provide for a continuum of the speedy trial sequence and cre-ates a realistic method to calculate total lapsed time for rule compliance. Consequently, as in this case where the request was seasonably made for reassignment not by the defense counsel but by the state's attorney, I would assess a further duty of immediate objection if anxiety about the rescheduled date is to be converted into issues for claimed error on appeal.

It may be that Rule 204 of the Uniform Rules for the District Courts would be improved by a flexibility provision providing for a reasonable extension of time exception to accommodate crowded dockets after initial extension is requested by either litigant. I do not need to reach such an exception here, however, when no reschedule request was made by Osborne after the initial continuance obviously extended the time. It is not sufficient to establish a rule violation in trial progression if the rescheduling request is left to the prosecutor after defense counsel first gets the delay and, even when rescheduled, does not object on a "speedy trial" basis to the succeeding trial assignment.

After requesting a continuance through counsel, I find an independent duty on Osborne to be responsible for requesting a rescheduled trial assignment or, even within the facts of this case, to note immediate objection when the next set trial date is delayed by the trial court's agenda. I do not intend, by my advocacy and adamancy about Rule 204 of the Uniform Rules for the District Courts and the constitutional obligation of the trial court to provide speedy trial, to impress expeditious processing only upon the trial court or prosecution, since I believe that an equivalent responsibility rests with Osborne and her counsel. *Robinson v. State*, 627 P.2d 168 (Wyo.1981), as cited by the majority, is persuasive to me in responsibility of Osborne even if the implied repeal concept, *see Estrada v. State*, 611 P.2d 850 (Wyo. 1980), is totally unacceptable. Common sense and reasonableness should attend trial court scheduling problems where an initial continuance is required in the interest of justice.

When the counted time stops by action of a defendant, it should start again by exercised affirmative responsibility of the de-

fendant; but only, of course, within reason since thereafter both the trial court and the prosecutor should also recognize the rule intent of 120 days is extended only by justified application of exceptions. The system, including all participants, serves the obligation and interest of speedy trial which benefits not only the community, but also the victims. Likewise, the other twenty-five uniform rules serve both society and participants in the search for fair and expeditious justice.

I conclude in both purpose and spirit that the applied text of Rule 204 of the Uniform Rules for the District Courts was not violated by the intervening time which passed before the trial was held. Until rescinded, the rule should be fully and effectively enforced. Consequently, I concur with the affirming decision.