2010 WY 44

**Kenneth Ermil JONES, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–08–0281.

Supreme Court of Wyoming.

April 16, 2010.

Representing Appellant: Michael H. Reese of Michael Henry Reese, P.C., Cheyenne, Wyoming.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jenny L. Craig, Assistant Attorney General. Argument by Ms. Craig.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Following a jury trial, Kenneth Ermil Jones was convicted of second degree sexual abuse of a child and sentenced to a term of imprisonment of five to fifteen years. Jones challenges his conviction, raising claims regarding the district court's denial of his motion for judgment of acquittal, the sufficiency of the evidence supporting the jury's verdict, and ineffective assistance of trial counsel. We affirm.

## ISSUES

[¶ 2] Jones presents these issues for our consideration:

I. Trial counsel made a Rule 29 motion at the close of the prosecution's case in chief. The [district] court denied the Defendant's Rule 29 motion. Did the district court err in denying Appellant's motion for judgment of acquittal?

II. Was there sufficient evidence to sustain a guilty verdict in this case for sexual abuse of a minor?

III. Was there ineffective assistance of counsel for 1) failure to seek a bill of particulars in light of an absence of detail about which conduct constituted sexual abuse and/or 2) failure to submit an Eagan instruction?

## FACTS

[¶ 3]   In September and October of 2007, Jones lived in a mobile home occupied by his girlfriend, LW (hereinafter Mother), and her two young children, RH (age seven) and TH (age six).   One morning, Mother returned home early from work and discovered Jones in bed with RH.   Mother noticed that Jones' front was pressed against RH's back, in what she described as a "spooning" position. Mother woke Jones, ordered him out of the room, and told him he was not allowed to be in the same bed as her son.   However, she again found Jones in bed with RH on another occasion.

[¶ 4]   Around mid-October, Mother evicted Jones from the mobile home and instructed him to stay away from her and the boys. She also contacted the Wyoming Department of Family Services and the Gillette Police Department.   Following an investigation, which included interviews with both RH and Jones, the State charged Jones with one count of sexual abuse of a minor in the second degree under Wyo. Stat. Ann. § 6–2–315(a)(ii) (LexisNexis 2009).[1]

[¶ 5]   At trial, RH testified Jones would crawl into bed with him after his mother left for work, and that both of them would be wearing only their underwear.   RH testified that, on those occasions, Jones would place his body against RH's back and his hands on RH's belly.   RH also stated there were times he would wake up in his mother's bedroom, lying in bed with Jones.   RH further testified Jones occasionally touched him on the parts of his body that his "underwear covers up," both in the "front" and the "back," where nobody is supposed to touch.   He stated that when Jones touched him in the back, it was usually when he was in trouble and was getting a spanking.   However, when Jones touched him in the front, it was "different" and not when he was in trouble.   RH

stated Jones' hand would be moving as he touched him in the front.

[¶ 6]   Detective Rebecca Elger of the Gillette Police Department testified regarding her interview of Jones, which was conducted shortly after Mother reported his behavior with RH to police and the Department of Family Services.   According to Detective Elger, Jones admitted to sleeping in the same bed with RH on several occasions and cuddling with him.   He reported he felt a void when Mother would go to work and "that he would go and get [RH] and bring him to the bed and cuddle with him, or he would go to [RH's] bed and cuddle with him there." Jones revealed he would get an erection when he cuddled with RH, and that he would always push away from RH because he did not want RH to notice his reaction.   Jones also acknowledged he may have touched RH's penis as he was helping RH tuck in his shirt, or at times when RH would sit on his lap to do homework, but he insisted it was always accidental.

[¶ 7]   At the close of the State's case, defense counsel moved for a judgment of acquittal.   The district court denied the motion, concluding the State had made a prima facie showing of the necessary elements of the charged crime.   Thereafter, the defense rested without presenting any evidence.   The jury found Jones guilty of the charged offense, and the district court imposed a prison sentence of five to fifteen years.   This appeal followed.

## DISCUSSION

### Denial of Motion for Judgment of Acquittal

[¶ 8]   The   salient   portion   of W.R.Cr.P. 29(a) reads as follows:

> The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, informa-

---

1.   Section 6–2–315(a)(ii) makes it unlawful for a person who is sixteen (16) years of age or older to engage in sexual contact with a victim who is less than thirteen (13) years of age.   "Sexual contact" is defined in § 6–2–301(a)(vi) (LexisNexis 2009) as

> touching, with the intention of sexual arousal, gratification or abuse, of the victim's intimate

parts by the actor, or of the actor's intimate parts by the victim, or of the clothing covering the immediate area of the victim's or actor's intimate parts[.]

Section 6–2–301(a)(ii) (LexisNexis 2009) defines "intimate parts" as "the external genitalia, perineum, anus or pubes of any person or the breast of a female person[.]"

tion or citation after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

When ruling upon a motion for judgment of acquittal, a trial court is called upon to determine, as a matter of law, whether in its opinion there is sufficient evidence to sustain the charge. On review of the denial of a motion for judgment of acquittal, this Court has the same duty. *Montez v. State,* 2009 WY 17, ¶ 18, 201 P.3d 434, 440 (Wyo.2009). We recently reiterated the principles governing a judgment of acquittal motion:

> [T]he district court must assume the truth of the evidence of the State and give to the State the benefit of all legitimate inferences to be drawn from that evidence. If a prima facie case is demonstrated when the evidence is so examined, the motion for judgment of acquittal properly is denied. It is proper to grant a motion for judgment of acquittal only if there is no substantial evidence to sustain the material allegations relating to the offense that is charged. Such a result is indicated if the evidence requires the jury to speculate or conjecture as to the defendant's guilt or if a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime when the evidence is viewed in the light most favorable to the State.

*Martinez v. State,* 2009 WY 6, ¶ 11, 199 P.3d 526, 530 (Wyo.2009) (internal citations omitted).

■ [¶ 9] Jones disagreement with the district court's denial of his motion for judgment of acquittal primarily rests on his contention that the district court should have considered the rule articulated in *Eagan v. State,* 58 Wyo. 167, 128 P.2d 215 (1942) and the *corpus delicti* rule in evaluating the adequacy of the State's evidence. We reject Jones' contention of error for several reasons.

[¶ 10] First, Jones' reliance on the *Eagan* rule is misplaced. That rule states:

> Where an accused is the sole witness of a transaction charged as a crime, ... his testimony cannot be arbitrarily rejected, and if his credibility has not been im-

peached, and his testimony is not improbable, and is not inconsistent with the facts and circumstances shown, but is reasonably consistent therewith, then his testimony should be accepted.

*Eagan,* 58 Wyo. at 198, 128 P.2d at 226. As indicated, the *Eagan* rule applies only to testimony by the accused. *Cheatham v. State,* 719 P.2d 612, 623 (Wyo.1986); *Cutbirth v. State,* 663 P.2d 888, 890 (Wyo.1983). In this case, Jones did not testify and, therefore, there was no testimony given by him that the district court, or for that matter the jury, could accept or reject. Even if we were to consider the testimony of Detective Elger relating Jones' statements as his testimony, it is clear Jones was not the sole witness to the criminal event, as the rule mandates. *Leeper v. State,* 589 P.2d 379, 382 (Wyo. 1979). RH testified about his contact with Jones. Mother also testified about certain relevant facts, which corroborated parts of RH's testimony. Given the circumstances, we are satisfied the *Eagan* rule is inapplicable and provides Jones no relief.

■ [¶ 11] Second, Jones' argument regarding the *corpus delicti* rule is likewise flawed. While Jones is correct that independent proof of the *corpus delicti* must exist apart from a defendant's extrajudicial confession or admission, *Simmers v. State,* 943 P.2d 1189, 1199 (Wyo.1997); *Kolb v. State,* 930 P.2d 1238, 1248 (Wyo.1996); *Betzle v. State,* 847 P.2d 1010, 1021–22 (Wyo.1993); *Konopisos v. State,* 26 Wyo. 350, 354–55, 185 P. 355, 356 (Wyo.1919), he is incorrect in his assertion that insufficient evidence existed outside the statement he gave to Detective Elger. In *Simmers,* we identified the sort of corroborating evidence that must exist in order to prove the commission of a crime:

> [The] corroborating evidence need only consist of substantial evidence that the offense has been committed, so that the evidence as a whole proves beyond a reasonable doubt that the defendant is guilty of the crime charged.
>
> Corroborating evidence is adequate if it supports the essential facts admitted sufficiently to justify a jury inference of the truth of the confession. The quanti-

ty and type of independent corroborating evidence depends upon the facts of each case. However, circumstantial evidence can be used to corroborate a confession.

*Simmers,* 943 P.2d at 1199 (quoting *United States v. Clark,* 57 F.3d 973, 976 (10th Cir. 1995)) (internal citations and quotation marks omitted).

■ [¶ 12] Here, evidence of Jones' wrongdoing was presented through avenues other than the statement he gave to Detective Elger—most prominently, the testimony of the victim. RH testified Jones would get into bed with him wearing only his underwear and, at times, he would sleep in his mother's bed when only Jones was there. He also testified Jones would touch him on that area of the front of his body that his underwear covered, that Jones' hand would be moving at those times, and that Jones touched him differently on a similar area of the rear of his body when he was in trouble. Additionally, RH's mother testified she saw Jones lying in RH's bed, with RH's body pressed against his. While this evidence, in and of itself, may not rise to proof beyond a reasonable doubt, the testimony required to overcome the *corpus delicti* rule need not rise to that level. Instead, it need only provide substantial corroboration that the offense has been committed, sufficient to allow the trier of fact to infer the truth of the confession. *Simmers,* 943 P.2d at 1199.

[¶ 13] Detective Elger's testimony regarding Jones' statement consisted primarily of information about him sleeping in bed with RH. This information was directly corroborated by RH and his mother's testimony. Jones argues that, because neither RH nor his mother gave testimony about his sexual arousal, that portion of his statement cannot be used as evidence against him. However, that interpretation far expands the scope of the *corpus delicti* rule.

■ [¶ 14] As we stated in *Simmers,* the "corroborating evidence need only consist of substantial evidence that the offense has been committed, so that the evidence as a whole proves beyond a reasonable doubt that the defendant is guilty of the crime charged." *Simmers,* 943 P.2d at 1199. Since RH and

his mother substantially corroborated Jones' statement, the district court could infer the truth of that statement, even if every single factual detail had not been corroborated. Therefore, it was appropriate for the district court to consider all of Detective Elger's testimony regarding Jones' statement, in conjunction with the rest of the evidence, in determining whether the State had presented a prima facie case.

[¶ 15] Lastly, we agree with the district court that sufficient evidence existed for the case to be submitted to the jury. As explained above, the State's evidence indicated Jones had touched RH in the front where his underwear covers. The evidence also revealed RH would wake up and find Jones in bed with him, and Jones would often get an erection while he was lying in bed with RH, indicating sexual arousal. Assuming the truth of that evidence and affording the State the benefit of all legitimate inferences to be drawn from it, the State had made a prima facie showing that Jones had engaged in sexual contact with RH. Thus, it was proper for the district court to allow the jury to determine whether the State proved its case beyond a reasonable doubt.

### Sufficiency of the Evidence

■ [¶ 16] Jones further contends his conviction cannot stand because the evidence, as a whole, is insufficient to support the jury's determination that he touched RH's intimate parts with the intention of sexual arousal, gratification or abuse. When reviewing a sufficiency of the evidence claim, we must determine whether the evidence and any reasonable inferences drawn from it, when viewed in the light most favorable to the State, are adequate to permit a reasonable trier of fact to find guilt beyond a reasonable doubt. *Granzer v. State,* 2008 WY 118, ¶ 23, 193 P.3d 266, 273 (Wyo.2008); *Lemus v. State,* 2007 WY 111, ¶ 47, 162 P.3d 497, 509 (Wyo.2007); *Statezny v. State,* 2001 WY 22, ¶ 15, 18 P.3d 641, 645 (Wyo.2001). It is the jury's responsibility to resolve conflicts in the testimony, weigh the evidence and draw reasonable inferences from the facts. *Sotolongo–Garcia v. State,* 2002 WY 185, ¶ 11, 60 P.3d 687, 689 (Wyo.2002). We will

not substitute our judgment for that of the jury but will only determine whether a quorum of reasonable and rational individuals could have found the essential elements of the crime were proven beyond a reasonable doubt. *Conine v. State,* 2008 WY 146, ¶ 5, 197 P.3d 156, 159 (Wyo.2008); *Grissom v. State,* 2005 WY 132, ¶ 24, 121 P.3d 127, 136 (Wyo.2005).

[¶ 17]   The record reveals that the State established at trial how RH referred to his intimate parts through the following examination:

> [Prosecutor] Are there certain parts of your body that nobody is supposed to touch but you?
>
> [RH] Yes.
>
> Q   Okay. What parts-where are those parts of your body?
>
> A   Just up on top of my belly.
>
> Q   Say that again, please.
>
> A   Just the top of my belly.
>
> Q   Okay. Is there anyplace else that nobody else is supposed to touch?
>
> A   Down by the knees, and on the front and the back.
>
> Q   Okay. Is [sic] there some clothes that you wear that cover up just that part of your body?
>
> A   Yes.
>
> Q   What clothes is [sic] that?
>
> A   My pants.
>
> Q   Are there any other things you wear inside your pants that just cover up those parts?
>
> A   Yes.
>
> Q   What's that?
>
> A   My underwear.

Based upon this testimony, the jury could reasonably conclude RH was referring to his genitals when he discussed the "front" and "where his underwear covers." Once the jury had an understanding of RH's terminology, the jury could reasonably conclude from the following testimony that Jones had touched RH on the genitals:

> [Prosecutor] Okay. We've talked a little bit about the part of your body where your underwear covers up. Do you remember if there's been any big people, like your mom or [Jones] or maybe doctors, anybody in the last year has touched that part of your body where underwear covers?
>
> [RH] Yes.
>
> Q   Okay. Who has touched that part of your body?
>
> A   Sometimes the doctors, and sometimes my mom, and sometimes [Jones].
>
> Q   Okay. When the doctors did it, was it when you went to the doctors and you weren't feeling good?
>
> A   Can you say that again, please?
>
> Q   Well, when you say the doctors looked at that part-touched that part of your body, did you actually go-maybe your mom took you to see the doctor?
>
> A   Yes.
>
> Q   Okay. Let's talk about when your mom does that. Did she do that-do you remember if there was some reason that she was doing that?
>
> A   Yes.
>
> Q   What was that?
>
> A   Sometimes I've been-sometimes naughty, and sometimes whenever I'm taking a bath.
>
> Q   So taking a bath or sometimes when you were naughty. Okay. When you were naughty, would she touch the front part of your body or back part of your body?
>
> A   The back and front.
>
> Q   Okay. Now, let's talk about when [Jones] would do that. Were you in trouble when [Jones] did that?
>
> A   Sometimes, and sometimes not.
>
> Q   Okay. Let's talk about the times when you weren't in trouble. What part of your body would he touch then?
>
> A   My front and the back.
>
> Q   Okay. When he touched those parts, what part of his body would he touch you with?
>
> A   His hand.
>
> Q   Do you remember, was his hand moving?
>
> A   Yes.
>
> Q   Can you tell me how it was moving?

A  It was—I really can't remember that.

Q  Okay.  You say he also touched the back part of that area where your underwear covers.  Was that when you were in trouble or other times?

A  Whenever I was in trouble.

Q  And how would he touch the back side when you were in trouble?

A  He would just—I'm not really sure.  I can't remember.

Q  Was it like a spanking?

A  Yes.

Q  Okay.  [RH], when [Jones] would touch the front part where your underwear goes, would that be the same-would he touch it the same way that he touched your back side, or would it be different?

A  It would be different.

[¶ 18] Additionally, the jury heard through the testimony of RH and his mother that, on several occasions, Jones would "spoon" with RH—that is, have the front of his body pressed against the back of RH's body—while lying with him in bed.  The jury also learned from Detective Elgers' testimony that Jones admitted to having an erection on several occasions when he cuddled with RH in bed.  Although there was no direct testimony Jones had touched RH's genitals while lying in bed with him, the fact that Jones frequently would lay with RH knowing he would be aroused could have led the jury to reasonably infer that when Jones did touch RH's genitals on other occasions, he did so with the intent of becoming sexually aroused.  We conclude the evidence is sufficient to support the jury's guilty verdict.

### Ineffective Assistance of Counsel

[¶ 19]  In his last contention of error, Jones claims he was denied his right to the effective assistance of counsel.  In particular, Jones faults counsel for failing to request a jury instruction incorporating the *Eagan* rule and failing to request a bill of particulars to clarify the facts underlying the criminal charge.  In analyzing ineffectiveness claims, we have stated:

When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance.  The reviewing court should indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Under the two-prong standard articulated in *Strickland [v. Washington ]* and *Frias [v. State],* an appellant claiming ineffective assistance of counsel must demonstrate on the record that counsel's performance was deficient and that prejudice resulted.  *Strickland,* 466 U.S. [668,] 687, 104 S.Ct. [2052,] 2064[, 80 L.Ed.2d 674 (1984) ]; *Frias,* 722 P.2d [135,] 145 [ (Wyo.1986) ].  In other words, to warrant reversal on a claim of ineffective assistance of counsel, an appellant must demonstrate that his counsel failed to "render such assistance as would have been offered by a reasonably competent attorney" and that "counsel's deficiency prejudiced the defense of the case."  *Lower v. State,* 786 P.2d 346, 349 (Wyo.1990).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064.

*Asch [v. State,* 2003 WY 18,] ¶ 11[, 62 P.3d 945, 950 (Wyo.2003) ].  The burden of proving that counsel was ineffective rests entirely on an appellant.  [*Id.*]  To satisfy his burden, an appellant must provide more than mere speculation or equivocal inferences.  *Sincock v. State,* 2003 WY 115, ¶ 37, 76 P.3d 323, [337] (Wyo.2003).

*Duke v. State,* 2004 WY 120, ¶ 36, 99 P.3d 928, 943 (Wyo.2004), *cert. denied,* 544 U.S. 1062, 125 S.Ct. 2513, 161 L.Ed.2d 1113 (2005) (some internal citations omitted).  We have further stated that, to satisfy the prejudice prong, an appellant must demonstrate the existence of a reasonable probability that, absent counsel's deficient performance, the result of the proceedings would have been different.  *Martinez v. State,* 2006 WY 20,

¶ 23, 128 P.3d 652, 663 (Wyo.2006). The failure to make the required showing of prejudice will defeat an ineffectiveness claim. *Id.*

 [¶ 20] We can readily dispose of Jones' claim concerning counsel's failure to seek an *Eagan* instruction. As previously discussed, the *Eagan* rule was not applicable under the facts of this case and, consequently, an *Eagan* instruction would not have been appropriate even if counsel had requested that one be given. Counsel's failure to pursue a jury instruction that, most likely, would have been refused by the district court does not constitute ineffective assistance. *See Duke,* ¶ 80, 99 P.3d at 952 (counsel not ineffective for failing to pursue lesser-included offense instruction which lacked a legal basis and would have been refused by trial court); *Blakeman v. State,* 2004 WY 139, ¶ 35, 100 P.3d 1229, 1238 (Wyo.2004) (counsel not ineffective for failing to seek exclusion of evidence properly admissible under W.R.E. 404(b)); *Lancaster v. State,* 2002 WY 45, ¶ 58, 43 P.3d 80, 102 (Wyo.2002) (ineffectiveness cannot be premised on counsel's failure to file suppression motion where no underlying basis existed for motion); *Herdt v. State,* 891 P.2d 793, 799 (Wyo.1995) (ineffectiveness cannot be premised on counsel's failure to seek relief which is not available).

[¶ 21] We also find no basis for concluding that counsel rendered ineffective assistance for failing to seek a bill of particulars. Jones contends that, because the charging document failed to provide sufficient notice of the conduct constituting the unlawful sexual contact, a bill of particulars was essential to his ability to adequately defend against the criminal charge. In this regard, Jones claims he was forced to defend against numerous allegations of sexual contact without knowing which one gave rise to the criminal charge. In assailing counsel, however, Jones has failed to explain how a bill of particulars would have altered or significantly aided the defense strategy in this case, which was a general denial of any wrongdoing. Jones has also failed to provide any analysis, within the context of the facts in this case, how the outcome of his trial might have been different absent the alleged attorney error. Needless to say, Jones has not demonstrated that counsel's assistance was constitutionally ineffective.

## CONCLUSION

[¶ 22] We hold that the district court properly denied Jones' motion for judgment of acquittal, and that sufficient evidence exists to sustain Jones' conviction. We also find Jones has not shown that defense counsel rendered constitutionally ineffective assistance. Affirmed.