Gary T. **BETZLE**, Appellant (Defendant),

v.

The **STATE** of **Wyoming**, Appellee (Plaintiff).

No. 91–74.

Supreme Court of Wyoming.

March 1, 1993.

**1012**

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender, and Lee E. Christian, Jostad Associates, Fort Collins, CO, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl, Deputy Atty. Gen., Richard E. Dixon, Senior Asst. Atty. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT[*] and GOLDEN, JJ.

THOMAS, Justice.

The primary issue presented by this case is whether inadmissible hearsay testimony was received at the trial of Gary T. Betzle (Betzle) on charges of second degree sexual assault; third degree sexual assault; and indecent liberties. The accused denounced testimony consisted of reports by a professional counselor, trained in psychology, and a pediatrician of what the intellectually-handicapped minor victim had told them about Betzle's criminal acts. The question is of special importance in this case because, apart from Betzle's own admissions, this testimony is the essential evidence that any crimes occurred. Betzle attacks the voluntariness of his admissions, and he also argues that, even if his confession was voluntary, there was not sufficient evidence presented at the trial to furnish independent corroboration of any crime. Other issues are raised concerning the invasion of the province of the jury by the counselor and the pediatrician because they stated opinions as to Betzle's guilt and vouched for the credibility of the victim; abuse of discretion by the district court in imposing particularly severe sentences; and ineffective assistance of counsel. We hold the testimony attacked as hearsay properly was received in evidence at the trial; Betzle's confession was voluntary; there was sufficient evidence of a *corpus delicti* to justify introducing his confession into evidence, even apart from the hearsay testimony; the testimony of the counselor and the pediatrician did not invade the province of the jury; the sentences imposed did not constitute an abuse of the discretion of the

[*] Chief Justice at time of oral argument; retired 1/1/93.

trial court; and the record does not justify Betzle's claim of ineffective assistance of trial counsel. The judgment and sentence are affirmed.

In his Brief of the Appellant, Betzle presented these issues:

I. Did the admission of the victim's hearsay statements violate the Appellant's constitutional right to confront his accuser?

A. Was it error to admit the child's hearsay statements to her school counselor because the hearsay lacked a proper foundation under Rule 803(4), W.R.E., and because the hearsay did not overcome the presumption against uncrossexamined evidence?

B. Were the hearsay statements made by the child to [the pediatrician] made for the purpose of obtaining medical treatment or diagnosis?

II. Were [the professional counselor] and [the pediatrician]'s opinions as to the fact that the child had been sexually abused inadmissible as an invasion of the province of the trier of fact?

III. Was the corpus delicti established by sufficient evidence independent of the Appellant's extrajudicial confession?

IV. Was the sentence given Appellant by the trial court an abuse of the trial court's discretion?

V. Was the Appellant denied effective assistance of counsel due to trial counsel's inadequate preparation, investigation and other errors?

VI. Under the totality of the circumstances, was Appellant's confession involuntarily given?

The State, in its brief as appellee, responded with its restated version of those issues, as follows:

I. Should Wyoming retain the *corpus delicti aliunde* rule, and if so, what form should the modern articulation of that rule take?

II. Does the record corroborate the truthfulness of appellant's confessions, independent of the admissible hearsay statements attributed to the victim?

III. Did the trial court properly admit statements made by the victim to her counselor, in light of established exceptions to the rule prohibiting hearsay, as well as necessity and trustworthiness?

IV. Did inherently trustworthy hearsay admitted under a "firmly rooted exception" violate the appellant's right to confront witnesses giving testimony against him?

V. Was appellant's confession given knowingly and voluntarily, under circumstances which betray no hint of duress or undue influence?

VI. Were the sentences imposed by the trial court lawful and appropriate?

VII. Did appellant enjoy vigorous and effective representation of counsel throughout his trial?

The victim in this case is a handicapped child. She suffered from a malignant brain tumor for which she had been subjected to radiation therapy, chemotherapy, and surgery. Although nine years old at the time of the alleged offenses, the victim's mental ability was that of a four-year old or a four-year, eight-month old child. She had been subjected to five surgeries which compounded her slowness, lack of coordination, speech problems, right-sided weakness and impaired long-term memory.

The victim's parents were divorced in 1982 and, subsequent to the divorce, the father was awarded primary custody although the mother was afforded liberal visitation rights including alternate weekends. Betzle was a baby sitter for the victim, and he was the only male baby sitter used by either of the parents prior to May of 1990. Betzle was the victim's baby sitter on approximately four to six occasions, and he would watch over her at his house. The victim stayed overnight at Betzle's home on April 14, 1990 and also spent several hours with him at his home on April 29, 1990.

Early in May of 1990, the victim complained to her father about soreness in her crotch area. At about the same time, her mother noticed the victim's appetite had decreased; there was difficulty in getting her to go to bed; she began wetting her pants; and she also began to complain of

vaginal pain. Not long after these events, a licensed professional counselor, who had been working with the victim for about two and one-half years, was notified by the school counselor of the possibility that the victim may have been sexually abused. Upon request, the professional counselor interviewed the victim to determine whether sexual abuse had occurred.

At about the same time, the victim's grandfather called the Gillette police department from Tallahassee, Florida and reported a suspected sexual molestation of his granddaughter. A detective at the Gillette police department telephoned DPASS to advise that office of the telephone conversation with the grandfather, and then the detective later interviewed the victim's father and a female friend of the victim's father concerning the grandfather's allegations. The female friend also baby sat with the victim, and she told the officer that, on one occasion about the end of April or the first of May, the victim told her the child had a "secret." The police detective asked the father to take the victim to the doctor and, when he neglected to do that, the detective made an appointment with a physician, who specialized in pediatrics (pediatrician), to examine the victim.

The product of the interview by the professional counselor was an opinion that the victim had been sexually abused. After performing her examination, the pediatrician also formed an opinion that the victim had been sexually abused.

On May 9, 1990, the police detective met Betzle at Betzle's home after work and asked Betzle to accompany him to the police station to answer some questions about an investigation he was conducting. Betzle agreed and drove himself to the police station. He was advised of his rights under the *Miranda* decision, and he was interviewed independently by the detective and later by another officer. Within an hour's time, Betzle provided the second investigating officer with several specific incidents of improper sexual contact with the victim. Betzle denied these events at trial.

In a criminal complaint filed on May 11, 1990, Betzle was charged with five counts of sexual assault and indecent liberties with a minor. Subsequently, an information was filed in the district court in which Betzle was charged with two counts of sexual assault in the second degree in violation of Wyo.Stat. §§ 6–2–303(a)(v) and 6–2–306(a)(ii), (b), (c)(i) (1988);[1] two counts of sexual assault in the third degree in viola-

1. Wyo.Stat. § 6–2–303(a)(v) (1988) provides:
(a) Any actor who inflicts sexual intrusion on a victim commits sexual assault in the second degree if, under circumstances not constituting sexual assault in the first degree:
 * * * * * *
(v) At the time of the commission of the act the victim is less than twelve (12) years of age and the actor is at least four (4) years older than the victim * * *.
Wyo.Stat. § 6–2–306(a)(ii), (b), and (c)(i) (1988) provides:
(a) An actor convicted of sexual assault who does not qualify under the criteria of subsection (b) of this section shall be punished as follows:
 * * * * * *
(ii) Sexual assault in the second degree is a felony punishable by imprisonment for not more than twenty (20) years * * *.
 * * * * * *
(b) An actor who is convicted of sexual assault shall be punished by the extended terms of subsection (c) of this section if:
(i) He is being sentenced for two (2) or more separate acts of sexual assault in the first or second degree;

(ii) He previously has been convicted of any crime containing the same or similar elements as the crimes defined in W.S. 6–2–302 or 6–2–303.
(c) An actor convicted of sexual assault who qualifies under the criteria of subsection (b) of this section shall be punished as follows:
(i) Sexual assault in the first or second degree is a felony punishable by imprisonment for not less than five (5) years or for life * * *.
Sexual intrusion is defined in Wyo.Stat. § 6–2–301(a)(vii) (1988), as follows:
(vii) "Sexual intrusion" means:
(A) Any intrusion, however slight, by any object or any part of a person's body, except the mouth, tongue or penis, into the genital or anal opening of another person's body if that sexual intrusion can reasonably be construed as being for the purposes of sexual arousal, gratification or abuse; or
(B) Sexual intercourse, cunnilingus, fellatio, analingus or anal intercourse with or without emission.

tion of Wyo.Stat. §§ 6–2–304(a)(ii) and 6–2–306(a)(iii), (b), (c)(ii) (1988);[2] and one count of taking immodest, immoral and indecent liberties with a child in violation of Wyo. Stat. § 14–3–105 (1986).[3] The handicapped girl was the victim in all of these alleged crimes.

Betzle opted for a trial by the court, and the judge found him guilty of two counts of sexual assault in the second degree, two counts of sexual assault in the third degree, and one count of indecent liberties with a child. Betzle then was sentenced to a term of not less than thirty years nor more than life for the two counts of sexual assault in the second degree, not less than four years nor more than five years for each count of sexual assault in the third degree, and not less than seven nor more than ten years for the count of indecent liberties with a child. The several sentences were specified to run consecutively. Betzle has taken this appeal from that judgment and sentence.

■ We address first the question of whether inadmissible hearsay testimony was received by the court at Betzle's trial. Hearsay is defined in Wyo.R.Evid. 801(c) as follows:

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

The statements made by the victim to the professional counselor and to the pediatrician constitute hearsay within this definition when those statements are repeated in court. Hearsay evidence, ordinarily inadmissible, however, can be received in evidence under one of the exceptions to the hearsay rule found in the Wyoming Rules of Evidence if the requirements of the rule exception are met. *Crozier v. State*, 723 P.2d 42 (Wyo.1986).

The trial court, after receiving extensive argument from counsel, admitted the statements made by the professional counselor and the pediatrician pursuant to a well-established hearsay exception found in Wyo.R.Evid. 803(4), which specifies:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

* * * * * *

(4) *Statements for purposes of medical diagnosis or treatment.*—Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reason-

2. Wyo.Stat. § 6–2–304(a)(ii) (1988) provides:

(a) Except under circumstances constituting a violation of W.S. 14–3–105, an actor commits sexual assault in the third degree if:

* * * * * *

(ii) The actor is an adult and subjects a victim under the age of twelve (12) years to sexual contact without inflicting sexual intrusion on the victim and without causing serious bodily injury to the victim.

Wyo.Stat. § 6–2–306(a)(iii), (b), (c)(ii) (1988) provides:

(a) An actor convicted of sexual assault who does not qualify under the criteria of subsection (b) of this section shall be punished as follows:

* * * * * *

(iii) Sexual assault in the third degree is a felony punishable by imprisonment for not more than five (5) years * * *.

(b) An actor who is convicted of sexual assault shall be punished by the extended terms of subsection (c) of this section if:

(i) He is being sentenced for two (2) or more separate acts of sexual assault in the first or second degree;

(ii) He previously has been convicted of any crime containing the same or similar elements as the crimes defined in W.S. 6–2–302 or 6–2–303.

(c) An actor convicted of sexual assault who qualifies under the criteria of subsection (b) of this section shall be punished as follows:

(ii) Sexual assault in the third degree is a felony punishable by imprisonment for not more than ten (10) years * * *.

3. Wyo.Stat. § 14–3–105 (1986) provides:

Any person knowingly taking immodest, immoral or indecent liberties with any child or knowingly causing or encouraging any child to cause or encourage another child to commit with him any immoral or indecent act is guilty of a felony, and upon conviction shall be fined not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) or imprisoned in the penitentiary not more than ten (10) years, or both.

ably pertinent to diagnosis or treatment * * *.

At the time the trial court admitted the professional counselor's testimony as to the victim's statements, the court said:

This is a very perplexing, and in many respects, a difficult problem.

I am looking at Louisell and Mueller's book at article 444, page 601, in volume four, when he's talking about the pertinency standard with respect to statements made to treating physicians. And he says: "The pertinency standard should be construed broadly enough to reach facts which would naturally be recited in a good-faith effort to provide needed information. If a patient, for example, tells a treating physician that he first felt pain while pulling some heavy pipes at work, the fact that diagnosis and treatment would have been the same if the patient had simply told the doctor that he stooped down and pulled on a heavy object should make no difference. Nothing is gained in terms of protecting the jury from untrustworthy evidence by applying Rule 803(4) so stringently as to require exclusion of details naturally included in an honest to-the-point effort to describe what happened."

And then he goes on to talk about the ascribing of fault.

Well, when we're talking about a child of this age, and particularly of this age and particular mental abilities, it doesn't appear to me that anything that she relates is something which attempts to attribute fault. It's merely a description of things happening.

The need for candor is, of course, underlies the exception for diagnosis and treatment. And if we accept the premise, which is generally espoused by experts in the field, that children are naturally candid about these things, in any event, and with some certain limited exceptions, don't make up stories about what happened to them sexually. And if you couple that with most of the information that pervade that when they are describing things which would ordinarily be beyond their sophistication, beyond their ken, that you can ascribe some reliability just to the mere fact that they're reciting things which they just would not have the ability or the inclination to make up, that makes their statements reliable in themselves.

So if you're just looking at the underlying test on the diagnosis and treatment as a candor rule, it would seem to me that probably statements made to a child—by a child to a reasonably skilled professional who is not leading the child or attempting to suggest to the child what the answer should be, that the same sorts of concerns about candor and reliability are met. There, of course, is no opportunity for cross examination, and that's something that generally is—is required under our understanding of due process. But I think the courts have said that if there are these other indicia of reliability, that the due process is met without the opportunity for cross-examination.

In a criminal case, I think we have the additional problem of not only due process but also of confrontation. And I recognize that that is a right that's pretty zealously guarded. And I would refer to that most recent decision by the United States Supreme Court which throughout the case, where I believe there was a screen placed between a testifying juvenile and a defendant, and Scalia, writing for the court, concluded that that was not—did not meet the requirements of confrontation.

So we have here a problem of a child who you now tell me is not going to testify at all, who is going to be permitted, if the State has its way, of coming into court and relating, through another, without any opportunity for cross examination, without any opportunity for confrontation, what—what happened.

And I—I'm looking at—I think that was the area of Louisell and Mueller that—that you were referring to, [Betzle's counsel] on page 611 where he talks about the difference between psychiatrists and medical people and that there may not be the same kind of pressure to be candid with a psychiatrist as there is

with a—a physician—another kind of physician. I'm not sure when we're talking about a child and relating these things that they're not, how important that is.

And I recognize that the Rules of Evidence in Wyoming, for instance, do not permit the substantive use of prior inconsistent statements of a witness in a trial, nor do the federal rules. However, the California rules permit prior inconsistent statements of a witness to be used substantively in a trial and in a criminal trial. And that would include not only an inconsistent statement in the sense that the witness testifies differently in the courtroom than they did before, but also in a circumstance where the witness refuses, or is unable to testify in the courtroom. I guess if we got the little girl on the stand, she was unable to testify, that that might meet that rule; that's been upheld as constitutional. It involves the same denial, it seems to me, of the right of confrontation as does the circumstance presented here.

A further dilemma, I think, arises from the posture of the case. Number one, since there's not a jury and I'm the finder of fact as well as the ruler on—the person who rules on evidence, I don't have the luxury of being able to take testimony outside of the presence of the jury, evaluate it, and then decide whether or not it's going to be admissible.

And I would have to say that it doesn't take a genius to understand the issues in the case. It seems quite probable to me, given what everybody's been saying and doing here, that if this witness is allowed to testify, that she's going to testify that Sleepy—or Sleeper [Betzle's nickname], I'm sorry—Sleeper was the person who did this. Also, I kind of gather from the way things have been going that there's a confession that Sleeper admitted to some or all of these acts.

So we have the problem not only of whether or not this evidence should be admitted for all purposes, but also, whether it should be admitted for limited purposes, for instance, providing corroboration for a confession, or for perhaps

even providing a predicate for admissibility of a confession, which I believe, Mr. Johnson, you're arguing under the Konopisos case, presents a real dilemma.

I'm going to allow the witness to testify. I will tell you now that if that's all there is, if the only evidence in this case about this defendant comes from the girl through the lips of a—of a psychologist, a judgment of acquittal is going to be in order. So you may proceed.

While this quotation is lengthy, it does manifest the careful concern of the trial judge with respect to the legal issues involved.

Wyoming precedent supports the ruling made by the court. In *Goldade v. State,* 674 P.2d 721 (Wyo.1983), *cert. denied,* 467 U.S. 1253, 104 S.Ct. 3539, 82 L.Ed.2d 844 (1984), and later in *Stephens v. State,* 774 P.2d 60 (Wyo.1989), we held that an expert witness may give testimony about what was said to the witness by an abused child under the exception articulated in Wyo. R.Evid. 803(4) provided: (1) the expert's testimony shows the victim's statements were consistent with the purposes for which the witness became involved with the victim, and (2) the witness relied on the statements in connection with diagnosis and treatment of the victim. In *Stephens,* the court adopted this two-part test from *United States v. Renville,* 779 F.2d 430 (8th Cir.1985) (applying Fed.R.Evid. 803(4), which is identical to Wyo.R.Evid. 803(4)) to assure such hearsay testimony conforms with the policy of the rule before the testimony is admitted. *Stephens. See also State v. Dever,* 64 Ohio St.3d 401, 596 N.E.2d 436, *reh'g denied,* 65 Ohio St.3d 1422, 598 N.E.2d 1172 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1279, —— L.Ed.2d —— (U.S.Ohio 1993) (adopting the *Renville* reasoning); *State v. Tracy,* 482 N.W.2d 675 (Iowa 1992) (affirming the *Renville* analysis). These elements were satisfied in this case. Other federal courts have promulgated similar rulings. *E.g., Dana v. Department of Corrections,* 958 F.2d 237 (8th Cir.1992), *cert. denied,* —— U.S. ——, 112 S.Ct. 3043, 120 L.Ed.2d 911 (1992); *Morgan v. Foretich,* 846 F.2d 941

(4th Cir.1988); *United States v. DeNoyer*, 811 F.2d 436 (8th Cir.1987); *United States v. Iron Shell*, 633 F.2d 77 (8th Cir.1980), *cert. denied*, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981); *United States v. Nick*, 604 F.2d 1199 (9th Cir.1979).

The professional counselor's testimony must be tested against these requirements. The victim was examined by the counselor at the request of a school counselor at the victim's school. The professional counselor had been working with the victim for almost two and one-half years, with most of that work done in the area of behavioral management and support along with some work on a previous, but unrelated, alleged abuse situation. The professional counselor conducted the interview with the victim in an effort to determine if there had been any abuse of the victim. The testimony of the professional counselor at trial was consistent with an interview for the purpose of diagnosing any need for specific counseling with respect to a new abuse situation and with the purpose of promoting that treatment if it were indicated. The professional counselor relied upon the victim's statements in connection with the diagnosis and potential treatment of the young girl. In this regard, the counselor explained:

Q. [Professional Counselor], how important is the reliability of the children's statements to you in these kinds of cases in the diagnosis that you make?

A. It's very important.

Q. Do you have practices and procedures you follow or rules of thumb that you follow in determining reliability of the reports you receive?

A. Yes.

Q. What are those?

A. They are a lot of times consistency, whether the child repeats the same thing more than once, whether or not when they tell me something, if it's repeated again identically to another person; that is looked at as consistency. Knowledge that is above and beyond their age level; that's another thing we look at. The accuracy of their knowledge, and according to their age appropriateness, the gen-

eral demeanor of the client, the child, how they act, if it's within their normal range. Many times there's a lot of subtle differences in the way a client will act. And if you've worked with them long enough, you begin to see those. So you take into account everything: What they say, how they say it, how much they say it, just everything is in there.

Examination of the pediatrician's testimony according to the same requirements also leads to the conclusion no error occurred. The victim was presented to the pediatrician at a regular office appointment by a police officer after the complaint of sexual assault. In her testimony, the pediatrician explained her physical findings and mental impressions with respect to the victim. The pediatrician also relied on statements by the victim in connection with her diagnosis and treatment. Specifically, she testified:

Q. And what is the purpose of speaking with the child in these examinations?

A. Well, based on the child's age, I try to decide whether they know things that a child that age should not know. And I also try to—if a child says that there's been vaginal penetration, then I know I have to look more closely at the vagina to see if there are any tears or any evidence of any problem. But it also—some children will say that there has been anal penetration, in which case I want to examine that more closely.

The testimony of both the professional counselor and the pediatrician fit within the requirements of the *Renville* test, and the hearsay statements from the victim were properly admitted into evidence under Wyo. R.Evid. 803(4).

■ Betzle, in support of his effort to exclude the statements of the victim, argues the statements the victim made to the professional counselor lacked a proper foundation under Wyo.R.Evid. 803(4), as interpreted in our ruling in *Stephens*. This argument is not persuasive. In *Stephens* we said:

If a foundation is presented which establishes that the identity of the perpetrator was necessary for diagnosis or treat-

ment, however, such a statement may be admitted under the rule.

*Stephens,* 774 P.2d at 72 (citations omitted).

Later, we said:

> The exception articulated in *Goldade* is based on the assumption that disclosure of the identity of the perpetrator satisfies the requirements of Rule 803(4), W.R.E., and thus encompasses the inherent reliability which justifies admission.

*Stephens,* 774 P.2d at 72.

We also stated:

> A statement need not be made to a physician, and statements made to hospital attendants, or even family members, may be admitted under Rule 803(4) if the foundation conditions are satisfied. Such statements are not required to refer to the declarant's physical condition. Statements made to close relatives, which then are reported to the doctor, may be admitted under the rule, although double or multiple hearsay may be presented.

*Stephens,* 774 P.2d at 73 (citations omitted).

The professional counselor testified about the relationship she had developed with the victim; her ability to communicate with the victim; the girl's ability to communicate with her; and to various indicia of reliability she and other professionals invoked in making a diagnosis and developing follow-up treatment plans. The professional counselor specifically testified:

> Q. Okay. And I believe—will you go on from there? What did—what did [the victim] respond to you when you asked her about whether it was a good baby-sitter or a bad baby-sitter?
>
> A. She indicated it was a baby-sitter.
>
> Q. Did she say anything else?
>
> A. She went on to—I had asked her who it was.
>
> Q. What did she say?
>
> A. She told me that it was Sleeper [Betzle].

The information that was furnished satisfies the foundation requirements articulated in Wyo.R.Evid. 803(4), as interpreted by this court in *Stephens. See also Crozier v. State,* 723 P.2d 42 (holding testimony of victim's school counselor, who had been working with victim on his learning disability and behavior problems for a year, was admissible under Wyo.R.Evid. 804(b)(6), the catchall exception requiring the declarant be unavailable.) Betzle contends that bootstrapping statements of identification are inappropriate under Wyo.R.Evid. 803(4), since such statements extend the rationale beyond the "firmly rooted" hearsay exception.[4] We also reject this contention. Those courts that have recently examined the question of whether statements of the victim concerning the identity of the perpetrator are admissible or not have concluded statements of identification are admissible because of the special character of diagnosis and treatment in child sexual abuse cases. Robert P. Mosteller, *Child Sexual Abuse and Statements for the Purpose of Medical Diagnosis or Treatment,* 67 N.C.L.Rev. 257 (1989).

The State laid its foundation prior to the questions directed to the professional counselor, and we do not perceive any bootstrapping here. The identification of the perpetrator by the victim was properly admitted. It should be noted further that no objection by Betzle can be found in the record with respect to this particular testimony by the professional counselor.

■ Betzle further argues he was deprived of his constitutional right of confrontation by his accuser as guaranteed by U.S. Const. amend. VI and Wyo. Const. art. 1, § 10. Betzle argues the general approach used by the United States Supreme Court to test hearsay admissions against confrontation rights requires: (1) either the production of the out-of-court declarant or demonstration of unavailability; and (2) assurances of reliability of the statement. *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

---

**4.** An in-depth analysis of the "firmly rooted" concept, together with reasons why it is neither helpful nor workable, can be found in Stanley A. Goldman, *Not So "Firmly Rooted": Exceptions to the Confrontation Clause,* 66 N.C.L.Rev. 1 (1987).

In a recent decision, the United States Supreme Court held the confrontation clause of the Sixth Amendment does not require the prosecution to either produce the declarant or, alternatively, a finding by the court that the declarant is unavailable before a trial court can admit testimony under the spontaneous declaration and medical examination exceptions to the hearsay rule. *White v. Illinois*, — U.S. —, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992). *Cf. Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) (holding child victim's hearsay statements violated perpetrator's confrontation clause rights, citing the *Roberts* standard requiring the prosecution to produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use and to demonstrate the statement bears adequate indicia of reliability); *McIntosh v. State*, 810 P.2d 373 (Okla.Cr.1991) (holding admission of child's hearsay statements as to identity of his abuser, although in violation of defendant's confrontation rights using the *Roberts* and *Wright* standard, was harmless error).

In *White*, the conviction was for a sexual assault upon a four-year-old girl. The state trial court permitted the child's baby sitter, her mother, an investigating officer, an emergency room nurse, and a doctor to testify, each recounting statements by the child describing the crime. *White*. The testimony was admissible pursuant to the Illinois hearsay exceptions for spontaneous declarations and for statements made for the purpose of securing medical treatment. The Illinois rule reads, according to *White*, — U.S. at — n. 2, 112 S.Ct. at 740 n. 2:

Illinois Rev.Stat., ch. 38, ¶ 115–13 (1989), provides:

"In a prosecution for violation of Section 12–13, 12–14, 12–15 or 12–16 of the 'Criminal Code of 1961', statements made by the victim to medical personnel for purposes of medical diagnosis or treatment including descriptions of the cause of symptom, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admitted as an exception to the hearsay rule."

In rejecting White's claim under the Sixth Amendment confrontation clause, the Supreme Court concluded that its decision in *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), *on remand*, 790 F.2d 383 (3d Cir.1986), "foreclosed any rule requiring that, as a necessary antecedent to the introduction of hearsay testimony, the prosecution must either produce the declarant at trial or show that the declarant is unavailable." *White*, — U.S. at —, 112 S.Ct. at 740. The *Inadi* decision had rejected the proposition that *Roberts* established a rule that no out-of-court statements would be admissible without a showing of unavailability. *White*. In *White*, as is true in this case, the victim did not testify at trial.

In addressing this issue, the Supreme Court noted the evidentiary rationale for permitting hearsay testimony regarding spontaneous declarations and statements made in the course of receiving medical care is that such out-of-court declarations are made in contexts that inherently provide substantial guarantees of their trustworthiness. *White*. A statement made in the course of procuring medical services, when the declarant presumably knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility that a trier of fact may not think can be replicated by testimony in the context of the courtroom. *White*. Where the proffered hearsay has those sufficient guarantees of reliability to bring it within a firmly-rooted exception to the hearsay rule, the confrontation clause of the Constitution is satisfied. *White*. The policy justification for admissibility is that the confrontation clause of the Constitution has as its basic purpose the promotion of the integrity of the fact-finding process. Consequently, the exclusion of probative statements such as these under the strictures of the confrontation clause would be antithetical to this fundamental purpose of the Constitution.

*White* affords a liberal application of the medical examination exceptions to the hearsay rule, and this is exactly what the trial court did in this case. Public policy justi-

fies a more liberal approach that should prevail in cases such as this because, although the child may be too young to know what is actually germane to his or her treatment, still the child has no reason to fabricate and, presumably, furnishes the physician a full account of the occurrence, simply as a part of the story of the injury. Lloyd Leva Plaine, Comment, *Evidentiary Problems in Criminal Child Abuse Prosecutions*, 63 GEO.L.J. 257 (1974). The use of the victim's statements as substantive evidence at trial did not violate Betzle's constitutional right guaranteed by either version of the confrontation clause. We hold that, in light of our prior cases and the Supreme Court decision in *White*, the testimony of the professional counselor and the pediatrician, attacked as hearsay, properly was received in evidence at the trial.

■ Our research also discloses that such testimony often is admitted into evidence under Fed.R.Evid. 803(24) which reads:

Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

The language of Wyo.R.Evid. 803(24) is very similar to the federal counterpart. At trial, the prosecuting attorney brought up this catchall exception and its twin, Wyo. R.Evid. 804(b)(6), which applies when the declarant is unavailable. *See* Fed.R.Evid. 804(b)(5); Wyo.R.Evid. 804(b)(6). The trial court acknowledged the unavailability of the witness in this instance, but it pointed out that, since notice was not given to the adverse party, the catchall exceptions could not be invoked. The ruling of the trial court was correct. In *Tennant v. State*, 786 P.2d 339 (Wyo.1990), we held notice was not given as required by either Wyo. R.Evid. 803(24) or Wyo.R.Evid. 804(b)(6), but only after making an in-depth analysis of the rules, their elements, the rationale behind the rules, and a reminder to practitioners of the notice required. In instances in which the potential of offering hearsay for substantive purposes is apparent, practitioners should be cognizant of the catchall exception and its potential use so that appropriate notice can be given to the adverse party. If the trial court chooses to rely on this exception to allow the admission of hearsay evidence at trial, it must make a record by appropriate statements of rationale, or findings of fact and conclusions of law to support its discretionary decision. *State v. Smith*, 315 N.C. 76, 337 S.E.2d 833 (1985). Trial courts have held testimony similar to the testimony in the case at bar admissible under Fed.R.Evid. 803(24) or 804(b)(6). *United States v. St. John*, 851 F.2d 1096 (8th Cir.1988); *United States v. Shaw*, 824 F.2d 601 (8th Cir.1987), *cert. denied*, 484 U.S. 1068, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988); *United States v. Cree*, 778 F.2d 474 (8th Cir.1985); *Huff v. White Motor Corp.*, 609 F.2d 286 (7th Cir.1979); *United States v. Guevara*, 598 F.2d 1094 (7th Cir.1979).

■ Betzle's next major contention is that there was not sufficient evidence introduced at trial to corroborate his confession even if it were voluntary. The State urges the court to adopt a rule that would permit a conviction to be sustained upon the uncorroborated statement of the accused. In *Konopisos v. State*, 26 Wyo. 350, 185 P. 355 (Wyo.1919), and more recently in *Leach v. State*, 836 P.2d 336 (Wyo.1992), and *Osborne v. State*, 806 P.2d 272 (Wyo.1991), we articulated our rule requiring there be proof of the *corpus delicti* apart from an extra-judicial confession of the accused in

order to prove the commission of a crime. We do not accept the invitation of the State to change that rule. We hold it is necessary, under Wyoming law, to require the introduction of evidence that is independent of the confession by the accused in order to prove a criminal offense.

■ In this case, the record discloses testimony by the victim's mother that, when the victim returned from Betzle's house, she would come home wearing different clothing, including one of Betzle's shirts on one occasion. Both the victim's mother and Betzle testified the victim stayed at his house all night on April 14–15, 1990. The father of the victim testified that, around the first of May, the victim complained to him she had soreness in her crotch area. At the same time, the victim's mother noticed a decrease in the victim's appetite, she began to wet her pants and to complain of vaginal pain. The pediatrician who examined the victim testified she observed irritation and redness in the genital area. The counselor of the victim noted that, when she took the victim to their interview room, the victim moved very close to the counselor, took her hand and walked with her without lagging behind which was unusual conduct for the victim. These items of evidence in the record establish sufficiently for purposes of corroboration, the commission of the offense charged, and we hold there was, in this case, sufficient evidence of the *corpus delicti* to justify the introduction into evidence of Betzle's confession.

■ With respect to Betzle's attack upon the voluntariness of his confession, the test for admissibility is whether, under the totality of the circumstances, the waiver of constitutional rights and subsequent statements given by an accused were voluntary, knowing, and made intelligently. *Mayer v. State*, 618 P.2d 127 (Wyo.1980) (citing *Jarrett v. State*, 500 P.2d 1027 (Wyo.1972)). Betzle initially was contacted by police officers about 4:30 P.M. on May 9, 1990. On that occasion, a detective stopped by his house and asked Betzle to come down to the police station and answer some questions. Betzle went to the police station in his own car, answered questions, returned to his apartment, and consented to a search of his residence by two detectives. After the search, Betzle returned to the police station and made a tape recording of his confession. Betzle knew his statements were being taped, but he later recanted his confession, testifying the tape was a fabrication. From the totality of the circumstances revealed by the record, we hold Betzle's confession was furnished voluntarily, knowingly, and intelligently.

■ In another issue, Betzle questions whether the testimony of the counselor and the pediatrician invaded the province of the jury because, he argues, each gave an opinion as to his guilt and vouched for the credibility of the victim. The decision of the trial court to admit or reject expert testimony is a decision solely within the sound discretion of the trial court and will not be reversed without a showing of clear and prejudicial abuse. *Braley v. State*, 741 P.2d 1061 (Wyo.1987). Wyo.R.Evid. 702 first demands inquiry as to whether the witness is qualified as an expert. The qualification of a witness as an expert is vested within the discretion of the trial court and, similarly, that determination will be overturned only when a clear abuse of discretion is shown. *Montoya v. State*, 822 P.2d 363 (Wyo.1991) (citing *Noetzelmann v. State*, 721 P.2d 579 (Wyo.1986)). *See MMOE v. MJE*, 841 P.2d 820 (Wyo.1992). The pediatrician in this case had been practicing pediatric medicine for six and a half years, examining, in the course of that practice, approximately fifty children like the victim for the purpose of determining the existence of sexual molestation. Had an objection been posed to the expertise of this witness on the ground that she lacked the qualification or training essential to an expression of an opinion as an expert in her field or if voir dire had been requested with respect to her qualifications, as a party must do to assign as error the lack of expertise, we would have a more adequate record to consider. This statement from John E.B. Meyers et al., *Expert Testimony in Child Sexual Abuse Litigation*, 68 NEB.

L.Rev. 1, 11 (1989) (footnote omitted), is peculiarly apt:

> A party opposing expert testimony may voir dire a witness in an effort to show that the witness is not qualified as an expert. Unless a witness is clearly unqualified, however, deficiencies in qualifications normally go to the weight accorded the witness's testimony rather than its admissibility. A witness need not be the foremost authority on child sexual abuse, nor must the expert understand every nuance of the subject.

Counsel for Betzle had an opportunity to cross-examine his witness, but no questions were raised regarding qualifications or training. The first attack on the pediatrician's qualification as an expert is found in Betzle's appellate brief. The trial judge found the pediatrician was possessed of sufficient experience to qualify her as an expert, and there is no abuse of discretion to be found in that decision.

 Betzle also attacks the credentials of the professional counselor in his brief. Betzle admits no objection was made during the trial, but urges upon us the plain error doctrine. We refuse to apply the plain error doctrine in this instance. This witness had a bachelor's degree in psychology, a master's degree in counseling psychology and human development, and is nationally certified by the American Association of Counseling and Development. She is a licensed professional counselor in the state of Wyoming. She had been practicing as a licensed counselor for approximately three years, working mostly with children and adolescents with an emphasis on medical counseling. In addition, this witness attended a week-long workshop on sexual abuse—the victim and the offender, workshops on rationale and motive therapy, play therapy, and other workshops oriented toward children. The trial judge also found the professional counselor's experience was sufficient to qualify her as an expert, and there is no abuse of discretion with respect to that decision.

 Turning then to the substance of the expert testimony, we have ruled, consistently with Wyo.R.Evid. 702, that ex-

pert testimony is admissible if it is helpful to the trier of fact. *Montoya; Lessard v. State*, 719 P.2d 227 (Wyo.1986). In *Montoya*, we held the testimony of a pediatrician that the victim had been molested was admissible under Wyo.R.Evid. 702, justifying that decision because the doctor was an expert, and her opinion did assist the trier of fact. *Montoya.* Montoya was convicted of taking immodest, immoral, or indecent liberties with a five-year-old victim. The victim testified, and that testimony was followed by corroboration by the victim's foster mother, a social worker, an undersheriff, and the examining physician. This court also has said that expert testimony meeting the following two criteria does not invade the province of the jury: (1) the challenged testimony assists the jury in understanding some peculiar aspect of the victim's behavior and (2) the challenged testimony does not involve a comment on the credibility or truthfulness of the victim. *Zabel v. State*, 765 P.2d 357 (Wyo.1988). *See also Rivera v. State*, 840 P.2d 933 (Wyo.1992).

In light of these rulings, the particular testimony of the two witnesses is scrutinized. At trial, and over a continuing objection, the professional counselor testified:

> Q. Would you be more specific, please. What is your opinion as to whether or not [the victim] was sexually abused when you saw her in May of 1990?
>
> * * * * * *
>
> A. It is my opinion that [the victim] was sexually abused.

The pediatrician offered this testimony:

> Q. And do you have an opinion whether [the victim] had been sexually abused at the time that you examined her based upon your interview and—physical exam?
>
> A. It was my opinion that there was sexual molestation based mostly on things she had said. It's very unusual for a child to invent things that don't make any sense to children.

The pediatrician's testimony was admitted without any objection from the defense.

Neither the professional counselor nor the pediatrician, in trial testimony, directly expressed an opinion as to the truthfulness of the victim. Neither stated an opinion as to Betzle's guilt like the opinions expressed in *Stephens*. Their opinions were respective conclusions that there had been sexual abuse and sexual molestation, respectively. We recognize that in many, if not most, instances the testimony of an expert will bolster the truthfulness of another witness. This incidental effect, however, does not serve, by itself, to render the expert testimony inadmissible. *Montoya*. In this instance, we hold that since both the professional counselor and the pediatrician were qualified as experts, and their opinion was of assistance to the trier of fact, the testimony was properly admitted pursuant to Wyo.R.Evid. 702.

■ In his fourth issue, Betzle contends the sentence imposed upon him by the trial court was an abuse of that trial court's discretion. Our established rule is that, on appeal, we do not set aside a sentence if it is within the legislatively mandated minimum and maximum terms in the absence of a clear abuse of discretion. *Carey v. State*, 715 P.2d 244 (Wyo.1986), *cert. denied*, 479 U.S. 882, 107 S.Ct. 270, 93 L.Ed.2d 247 (1986). Betzle's contention is that the sentencing court, in effect, invoked a form of an habitual criminal act in order to illegally enhance the sentence imposed upon him, without giving notice and in the absence of conclusive evidence as to a past conviction. Betzle's specific complaint is that the lack of notice prevented him from preparing a defense with respect to the prior conviction, from collaterally attacking the prior conviction, and from deciding whether to remain silent as to any prior conviction. The trial court convicted Betzle of two counts of sexual assault in the second degree; two counts of sexual assault in the third degree; and one count of taking immoral, immodest, or indecent liberties with a child. When Betzle was arraigned, the court explained the charges against him, the possible penalties, and his constitutional rights. At the sentencing hearing after trial, the court did discuss the prior conviction of Betzle in Wisconsin and

the similarities between that case and this case.

Betzle's complaint is that the trial court elevated the penalty under the extended terms of Wyo.Stat. § 6–2–306(c) because the criteria of § 6–2–306(b) were met. However, in imposing a sentence of not less than thirty years nor more than life on the two convictions of sexual assault in the second degree, the court enforced the sentence that was explained to Betzle at his arraignment. The trial court properly relied on § 6–2–306(b)(i) and –306(c)(i). The sentence that was imposed is within the legislatively mandated minimum and maximum terms for the crimes of which Betzle was found guilty, without any reference to any prior conviction. We hold the sentences imposed did not reach the level of an abuse of discretion in this instance.

■ In a final claim of error, Betzle urges he did not receive effective assistance of counsel and, therefore, his conviction was not constitutionally obtained. As articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), and followed in *Frias v. State*, 722 P.2d 135 (Wyo.1986), two elements must be established by the appellant to prevail on an ineffective assistance of counsel claim. *See Barron v. State*, 819 P.2d 412 (Wyo.1991); *Engberg v. Meyer*, 820 P.2d 70 (Wyo.1991). The first is that the appellant must show his counsel's performance was deficient, and the second is that the appellant must show the deficient performance prejudiced him in presenting his defense. *Strickland; Dickeson v. State*, 843 P.2d 606 (Wyo. 1992); *Keene v. State*, 835 P.2d 341 (Wyo. 1992).

■ Betzle argues the representation by trial counsel was inadequate in preparation and investigation. Specifically, Betzle contends trial counsel failed to: interview the professional counselor prior to trial; make an effective cross-examination of the professional counselor; contest the voluntariness of Betzle's confession prior to trial; call or subpoena certain witnesses; file

a motion in limine as to the hearsay statements; receive a determination on the record as to the competency and unavailability of the victim as a witness; and collaterally attack the prior conviction.

The fact is, of course, that the professional counselor had no obligation to talk with counsel for Betzle prior to the trial even though he made a reasonable effort to interview her. We must concede that cross-examination is very important in any trial, but the particular questions asked by counsel are a part of trial tactics and strategy and, even though, in hindsight, we can conceive of a better cross-examination, the record does not demonstrate the cross-examination of a professional counselor was so deficient as to prejudice Betzle. Arguably, the voluntariness of the confession should have been contested prior to trial; other witnesses should, or perhaps should not, have been subpoenaed; it may have been prudent to file a motion in limine as to the hearsay statements; but, even if representation in these particular areas should be determined to be deficient in some respects, the second prong of the *Strickland* test was not satisfied. Betzle has failed to carry his burden of proving the alleged deficient performance by counsel prejudiced his defense. As the State argued in its brief, Betzle's trial counsel preserved an excellent record for appeal with respect to the *Konopisos* case, hearsay, and the confrontation clause. After having weighed Betzle's contentions against the test articulated in *Strickland*, we conclude the record does not justify any claim of ineffective assistance of trial counsel, and there is no showing of substance that would call for a remand for an evidentiary hearing.

The judgment and the sentence are affirmed in every respect.

URBIGKIT, Justice, Retired, concurring in part and dissenting in part.

This appeal presents the question of whether the Wyoming Supreme Court will assume its constitutional responsibility to rationally consider the proportionality and severity of a multi-layered sentence. In this case, that consideration is derived from successive sentences which are undoubtedly the most severe, for this character of transactional occurrence, that has ever been entered by a court of this state. This appeal demonstrates that trial to a court, rather than before a jury, is not necessarily providential when severity of sentence issues develop.

Sexual abuse of a child for whom appellant was babysitting during the period of April 14, 1990 to April 29, 1990 resulted in a combined sentence, to be served consecutively, of thirty years to life; seven years to ten years; four years to five years; and four years to five years. The total sentence creates a minimum confinement of forty-five years to a maximum confinement of life plus twenty years.

By all criteria, this was intended to be a life sentence, consecutively created. It is not disputed that the offenses charged were serious and a severe sentence was justified, but the result went beyond any rational degree of equivalent uniformity when considering Wyoming sentencing severity. *See, e.g., Rivera v. State,* 840 P.2d 933 (Wyo.1992) (holding merger of a sexual assault offense and an offense of taking immodest, immoral or indecent liberties may occur when facts established at trial prove that defendant committed only a single criminal act). Proportionality in sentencing, making punishment fit the crime, remains a relevant subject for state appellate courts' independent scrutiny. *Compare Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) and *People v. Bullock,* 440 Mich. 15, 485 N.W.2d 866 (1992) *with Harmelin v. Michigan,* —— U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). *See Saldana v. State,* 846 P.2d 604 (Wyo.1993), Urbigkit, J., dissenting.

I am also uncomfortable with the level of hearsay and ex parte opinion testimony utilized for conviction. It was simply cumulative when considered in light of the totality of the properly admitted evidence which was strongly inculpatory. The fact that strong evidence of guilt existed is not, in my opinion, an excuse to add questionable evidence to augment the pile. *See* W.R.E. 403 (stating rule that although relevant, cumulative evidence may be excluded).

Evidence of guilt was great and the decision to convict justified without the barrage of secondhand testimony paraded before the trial court as primary evidence of guilt. Some day, courts, even the courts of this state, are going to have to step back and re-establish the tradition of conviction determined by validated and real evidence instead of hearsay repeated and disguised with forensic opinions of trial-directed experts.

I concur in affirming the conviction. The trial proceedings and quantity of evidence sufficiently demonstrated guilt; however, I dissent to the severity of sentence which is beyond fairness and uniformity, even when considering the seriousness of the criminal acts committed by appellant on the defenseless victim. If trial witness perjury, including specifically those witnesses who by occupation have been previously sworn to support, obey and defend the constitution, not deny it, as public officials, was accommodated with the same life sentence severity, where the very integrity of the adjudicative system is at stake, the relative severity in this case would make somewhat more sense. Under the dual criteria of due process and equal protection, authenticated by the Wyoming Constitution in its first article, we should expect this court to recognize a responsibility to the entire system and require severity in punishment for such things as perjury, a crime which decimates the intrinsic structure of the justice delivery system while, at the same time, providing a rationality of reasonable equality for the many cases of recognized guilt but non-uniform sentencing application.

Consequently, I would affirm the conviction and submit the case for re-sentencing on some proportionality basis equivalent to a general standard. It is recognized that the trial court has a continuing opportunity to accord further consideration, but this court has an initial responsibility in application of its oath of office under the Wyoming Constitution to the appeal presently presented.