**David Alfred BLAKE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 95–306.

Supreme Court of Wyoming.

Feb. 25, 1997.

Sylvia Lee Hackl, State Public Defender; and Donna Domonkos, Assistant Appellate Counsel (argued), for Appellant (Defendant).

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker, Assistant Attorney General (argued), for Appellee (Plaintiff).

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN* and LEHMAN, JJ.

LEHMAN, Justice.

David Alfred Blake (Blake) was convicted of two counts of second degree sexual assault of his stepdaughter in violation of W.S. 6–2–303(a)(vi) (1988).[1] Although the victim did not testify at trial, the district court permitted a treating physician to testify to statements made by the victim which identified Blake as the perpetrator. The primary issue on appeal is whether the admission of the victim's statements under the exception to the hearsay rule articulated in W.R.E. 803(4) violated Blake's sixth amendment right to confront his accuser.

We affirm.

## ISSUES

Blake presents the following issues:

I. Was the appellant's Sixth Amendment right to confront his accuser violated when Dr. Bowers testified identifying the appellant as the assailant without calling the seventeen year old alleged victim to the stand?

II. Can the appellant's conviction stand when the State failed to prove an essential element of the crime?

The State counters with these issues:

I. Whether the district court properly admitted statements made by the victim to a physician under a "firmly rooted exception" to the rule prohibiting hearsay and did not violate appellant's right to confront witnesses against him.

II. Whether the evidence is sufficient to sustain appellant's convictions of second degree sexual assault.

* Chief Justice at time of oral argument.

1.    § 6–2–303. Sexual assault in the second degree.
(a) Any actor who inflicts sexual intrusion on a victim commits sexual assault in the second

## FACTS

Responding to a report of alleged sexual abuse of a sixteen-year-old girl, an investigator from the Department of Family Services (DFS), together with an officer from the sheriff's office, interviewed the victim at a local high school. Following the interview, the victim was transported to the hospital emergency room for medical examination. During the course of the examination, and in response to questions by Dr. Mary Bowers, the victim stated that she had been forcibly subjected to sexual intercourse by her stepfather, Blake, numerous times over the previous several years.

Blake was interviewed later that same day at the sheriff's office. Blake confessed to having sexual intercourse with his stepdaughter for the past three to four years and, at the conclusion of the interview, he reviewed and signed a typed statement which embodied his statements and confession. He was then placed under arrest.

At trial, neither the State nor Blake called the victim to the witness stand. The State relied upon Blake's typed confession, Dr. Bowers' testimony, testimony of the nurse who assisted Dr. Bowers in the examination of the victim, testimony by the DFS investigator, testimony by the officer who interviewed the victim, and testimony by the officer who interviewed and obtained a confession from Blake. Over a continuing objection by defense counsel, the district court allowed Dr. Bowers to testify concerning what the victim stated to her during the sexual assault examination, including the victim's statements identifying Blake as the sexual assault perpetrator, pursuant to W.R.E. 803(4). The jury returned a verdict of guilty, convicting Blake of two counts of

degree if, under circumstances not constituting sexual assault in the first degree:
* * *
(vi) The actor is in a position of authority over the victim and uses this position of authority to cause the victim to submit[.]

second degree sexual assault. Blake timely appeals.

## HEARSAY EVIDENCE

### A. Admissibility

Rulings on the admissibility of evidence are discretionary, and such rulings by a district court will not be upset absent a clear abuse of discretion. *Vit v. State,* 909 P.2d 953, 956 (Wyo.1996); *Hodges v. State,* 904 P.2d 334, 340 (Wyo.1995); *Curl v. State,* 898 P.2d 369, 373 (Wyo.1995). An abuse of discretion has been said to mean an error of law committed by the court under the circumstances. *Herdt v. State,* 891 P.2d 793, 801 (Wyo.1995); *Martinez v. State,* 611 P.2d 831, 838 (Wyo.1980). The burden is upon appellant to demonstrate such abuse, *i.e.,* that the court acted in a manner exceeding the bounds of reason and could not rationally conclude as it did. *Herdt,* at 801; *Armstrong v. State,* 826 P.2d 1106, 1111 (Wyo. 1992); *Pearson v. State,* 811 P.2d 704, 707 (Wyo.1991).

Blake asserts that the admission of the hearsay statements made by the victim to Dr. Bowers was erroneous because the identity of the perpetrator was not necessary for the diagnosis or treatment of the victim. According to Blake, such statements were hearsay and did not fall within the medical/diagnosis treatment exception to the hearsay rule.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." W.R.E. 801(c). The statements of the victim to which Dr. Bowers testified constitute hearsay within this definition. Although hearsay evidence is ordinarily inadmissible, it may be received into evidence when it falls within one of the exceptions to the hearsay rule. W.R.E. 802; *Owen v. State,* 902 P.2d 190, 195 (Wyo.1995).

The trial court, after receiving argument from both counsel, allowed Dr. Bowers to relate the victim's statements pursuant to W.R.E. 803(4), which provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> (4) *Statements for purposes of medical diagnosis or treatment.*—Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment[.]

We acknowledge the general rule that statements attributing fault or identity usually are not admissible under rules identical to W.R.E. 803(4). *Goldade v. State,* 674 P.2d 721, 725 (Wyo.1983). However, we have held that in situations involving physical or sexual abuse of children, statements made by a child victim to a medical professional may be admitted.[2] *Goldade,* 674 P.2d 721; *Stephens v. State,* 774 P.2d 60, 72 (Wyo.1989); *Betzle v. State,* 847 P.2d 1010, 1017 (Wyo.1993); *Owen v. State,* 902 P.2d at 195. Statements of identification in child abuse cases are admitted because of the special character of diagnosis and treatment in sexual abuse cases. *Betzle,* at 1019.

This court first had occasion to address this issue in *Goldade.* In that case, we upheld the admission of statements by a child victim to the treating physician under W.R.E. 803(4). In so holding, we noted that child abuse is a unique and special problem encompassing more than physical injury. The State has expressed special concern for that problem in Wyoming's child protection statutes, and physicians and other medical personnel play a special role in detecting and

---

**2.** Our research reveals that an overwhelming majority of jurisdictions, including at least 32 states and 4 federal circuits, allow into evidence statements regarding the identity of the perpetrator in child physical or sexual assault cases. Many admit the statements pursuant to rules that are identical to W.R.E. 803(4). Several jurisdictions limit admission to those cases where the perpetrator is a member of the immediate household or a relative, close family friend, or babysitter.

dealing with the problem of child abuse. *Goldade,* 674 P.2d at 725–27.

In *Stephens,* we emphasized that a proper foundation is essential to justify admission of identity statements under W.R.E. 803(4). We cited with approval the two-part test set forth in *United States v. Renville,* 779 F.2d 430 (8th Cir.1985), which encompasses the foundation requirement. 774 P.2d at 72–73. The *Renville* test requires that, first, the declarant's motive in making the statement is consistent with the purposes of promoting treatment or diagnosis and, second, that the content of the statement is reasonably relied on by a physician in treatment or diagnosis. *Id.* at 72 (quoting *Renville,* 779 F.2d at 436). Because the case was remanded for a new trial, we did not decide whether the statements in *Stephens* were admissible.

More recently, this court applied the *Renville* test in *Betzle,* 847 P.2d at 1017, and *Owen,* 902 P.2d at 196. In both those cases, we upheld the admission of hearsay testimony of an expert witness as to the identity of the perpetrator under the W.R.E. 803(4) exception, finding the two-part test was met.

Our inquiry now turns to whether in this case the requirements of the *Renville* two-part test were fulfilled. At trial, Dr. Bowers testified as follows:

Q. What was the purpose of the examination?

A. The purpose of the examination was to provide health care because of an alleged sexual assault.

Q. Did you perform any specific examination on her?

A. Yeah. I performed a comprehensive physical examination on her, including a pelvic examination.

\* \* \*

Q. Okay. Could you please just describe generally what you normally would do, what you normally do, the procedure you normally follow in a rape kit examination.

A. The kit itself has specific instructions for the health care provider; and I usually begin by explaining what the purpose of the examination is to the patient and by taking a history from that patient about what has happened to them so that I can properly use the kit, collect specimens, so that I can also provide appropriate medical care.

\* \* \*

Q. Could you describe [victim's] condition at the time?

A. [Victim] was a very—very subdued, very quiet young lady. She was—we use the term "in no acute distress." She wasn't medically unstable; but she was quite withdrawn, seemed somewhat exhausted.

\* \* \*

Q. All right. Now, during the course of your examination did you have an opportunity to ask [victim] any questions?

A. Before proceeding with the exam, I asked her a number of questions to help direct my exam and determine what might be appropriate.

Q. Okay. Generally speaking, what types of questions would you have asked?

A. I ask general questions about what kinds of assault she may have been subjected to, what kind of sexual contact may have occurred, what she remembers of what had occurred, whether or not— whether or not she was aware of body fluids present in her, whether or not she had had any symptoms of vaginal discharge, itching, abdominal pain that might represent sexually-transmitted disease, what parts of her body had been violated.

Q. What is the purpose in asking those questions?

A. To determine where to collect certain kinds of specimens, what kinds of bacteriology studies to do, what kinds of treatment might be necessary to care for her and keep her healthy, restore her to health if she's ill.

\* \* \*

Q. Do you recall what the first question was that you asked her [victim]?

A. I asked her the nature of the assault, what had transpired that brought her to the emergency room.

Q. Okay. And why did you need to know that?

A. It was important for me to understand as a physician what her emotional state was; and I explained to her that I wanted to help her, that—because this is invariably an unpleasant experience, and I wanted to find out exactly why she was there.

Q. Was it important for your purposes of diagnosis or treatment?

A. It certainly is important. Who the alleged assailant might be in a sexual assault determines frequently the extent to which testing and treatment is given.

Q. In asking that question, what did she say?

A. She told me that she had been subjected to sexual intercourse forcibly by her stepfather numerous times over the previous several years.

Q. What did you ask her next?

A. I asked her when the most recent episode had been and what had happened, under what circumstances and if there was physical trauma.

\* \* \*

Q. How did she respond?

A. She responded that approximately a week prior to that she had been forced to the floor of the bathroom in their home and had had forcible genital sexual intercourse with her stepfather.

■ We conclude that the State laid the proper foundation and that the elements of the *Renville* two-part test were satisfied. The victim was examined by Dr. Bowers as a result of an investigation into allegations that she had been sexually abused. Dr. Bowers testified that in a rape kit examination, she takes a history from the patient about what has happened so as to properly collect specimens and provide appropriate medical care. The doctor also described the importance of understanding a victim's emotional state in a sexual assault case. The victim's statements were consistent with the purposes for which Dr. Bowers became involved with the victim,

that is, to perform tests and treat the victim as necessary. Dr. Bowers' testimony indicates that she relied on the victim's account of the circumstances surrounding the sexual assault, including the abuser's identity, to determine how to properly treat the victim.

■ Blake asserts that because the victim was seventeen at the time of trial, her statements lack the reliability of statements made by a younger victim. Blake attempts to distinguish *Goldade, Betzle* and *Owen* on the ground that the victims in those cases were much younger than the victim here. We find no merit in this argument. The age of a child and her personal characteristics go toward the weight of the hearsay statements rather than their admissibility. *United States v. George,* 960 F.2d 97, 100 (9th Cir. 1992). Blake had the opportunity to attack the credibility of the victim but chose not to do so. The district court did not abuse its discretion by admitting the victim's hearsay statements into evidence pursuant to W.R.E. 803(4).

### B. Right to confrontation

Blake argues he was deprived of his constitutional right to confront his accuser as guaranteed by the United States and Wyoming constitutions. *See* U.S. Const. amend. VI; Wyo. Const. art. 1, § 10. The United States Supreme Court has held that F.R.E. 803(4), which is identical to W.R.E. 803(4), represents a firmly-rooted exception to the hearsay rule, *Betzle,* 847 P.2d at 1020 (citing *White v. Illinois,* 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)), and therefore, admission of evidence pursuant to this rule does not violate the confrontation clause of the Constitution. This is so even when the State does not produce the declarant and the court does not find the declarant to be unavailable. *Betzle,* at 1020. In *White,* the Supreme Court noted that the evidentiary rationale for permitting hearsay testimony regarding statements made in the course of receiving medical care is that such out-of-court declarations are made in contexts that inherently provide substantial guarantees of their trustworthiness. *Id.* A statement made in the course of procuring medical

services, when the declarant presumably knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility that a trier of fact may not think can be replicated by testimony in the context of the courtroom. *Id.* Where the proffered hearsay has those sufficient guarantees of reliability to bring it within a firmly-rooted exception to the hearsay rule, the confrontation clause of the Constitution is satisfied. *Id.*

■ The statements at issue, spoken to a doctor treating the patient because she had been sexually assaulted, possessed the required guarantees of reliability to bring them within the firmly-rooted exception to the hearsay rule. *See Owen v. State,* 902 P.2d at 195–97. Therefore, Blake was not denied his constitutional right to confront the witness against him.

### SUFFICIENCY OF EVIDENCE

Blake argues that the State failed to prove an essential element of the crime for which he was charged and convicted. In this regard, Blake contends that the evidence was insufficient. Specifically, Blake argues that the State did not prove that he was in a position of authority over the victim and used this position of authority to cause the victim to submit.

■ In reviewing a claim of insufficient evidence, this court assesses whether all the evidence formed an adequate basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by a finder of fact when that evidence is viewed in the light most favorable to the State. *Bloomquist v. State,* 914 P.2d 812, 823 (Wyo.1996); *McCone v. State,* 866 P.2d 740, 755 (Wyo.1993). This court does not substitute its judgment for that of the jury but rather determines only if a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did. *Bloomquist,* at 824.

Essentially, Blake argues that the State presented no evidence that he held a position of authority over the victim and used that authority to make her submit, other than the fact that he was her stepfather. In *Scadden*

*v. State,* we stated that the legislature used the word "authority" in W.S. 6–2–303(a)(vi) to mean an externally granted power, not self-generated control. 732 P.2d 1036, 1042 (Wyo.1987). A person in a position of authority acquires that status by virtue of society and its system of laws granting to him the right of control over another. *Id.* We went on to pronounce that the legislature enacted the statute to prohibit persons in positions of authority from using those positions to cause any individual who might be subject to authoritative power to submit to sexual acts. *Id.*

W.S. 6–2–301(a)(iv) (1988) defines "position of authority":

"Position of authority" means that position occupied by a parent, guardian, relative, household member, teacher, employer, custodian or any other person who, by reason of his position, is able to exercise significant influence over a person.

We stated in *Brown v. State* that a stepfather, as a parental figure, generally is in a position to exercise authority and control over stepchildren. 817 P.2d 429, 440 (Wyo. 1991). In upholding Brown's conviction for sexual assault, we concluded that the jury reasonably could have inferred, as it did, that any resistance by his stepchildren was undermined by Brown's authority and his role in the household. *Id.*

■ Blake's status as the victim's stepfather and a household member clearly satisfies the statutory definition of position of authority. Given the fact that a stepparent is viewed by society and the legislature as one who has authority over stepchildren and given the fact that testimony at trial showed that the victim submitted to Blake by virtue of this position of authority, we find that when the evidence is viewed in the light most favorable to the State, it is sufficient to uphold the conviction.

### CONCLUSION

Hearsay statements made by a child victim to a treating physician which identify the perpetrator may be admitted into evidence pursuant to W.R.E. 803(4), provided the two-part *Renville* test is satisfied. In this case,

the elements of the test were met, and the district court therefore did not abuse its discretion when it admitted the testimony. Additionally, the statements possessed sufficient guarantees of reliability so that Blake's right to confront the witness was not violated. Finally, sufficient evidence exists to support the jury's finding that Blake used his position of authority as a stepparent to force the victim to submit.

Affirmed.